## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENNAN CENTER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF LAW,<br><br>      Plaintiff,<br><br> vs.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>      Defendant. | Case No. 17 Civ. 7520 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Brennan Center for Justice at New York University School of Law brings this action against Defendant U.S. Department of State to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. Specifically, Plaintiff seeks:

 a. The report submitted by the Secretary of the Department of Homeland Security to President Trump on July 9, 2017, referred to in Section 1(c) of the Proclamation issued by President Trump on September 24, 2017, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" (the "Proclamation," attached as **Exhibit A**);

 b. The report submitted by the Secretary of Homeland Security to President Trump on September 15, 2017, referred to in Section 1(h) of the Proclamation;

 c. If not included in the reports referred to in Sections 1(c) and 1(h) of the Proclamation, the final reports submitted by the Secretary of Homeland Security to President Trump on each of the eight countries identified in Section 2 of the Proclamation, *i.e.*, Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia; and

 d. If not included in the reports referred to in Sections 1(c) and 1(h) of the Proclamation, the final reports submitted by the Secretary of Homeland Security to President Trump on the sixteen countries identified by the Secretary as being

"inadequate," referred to in Section 1(e) of the Proclamation, to the extent that they were not included in the list of seven countries in Section 1(h)(ii).

These four categories of documents are hereinafter referred to as "the Requested Documents."

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this claim pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii).

4.      Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.      Plaintiff Brennan Center for Justice at New York University School of Law ("Brennan Center") is a nonprofit, nonpartisan law and policy institute that is focused on fundamental issues of democracy and justice.  The Brennan Center's Liberty and National Security ("LNS") Program uses innovative policy recommendations, litigation, and public advocacy to advance effective national security policies that respect the rule of law and constitutional values.  The Brennan Center is a 501(c)(3) corporation headquartered at 120 Broadway in New York, New York.

6.      Defendant United States Department of State ("DoS") is a U.S. agency under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1).  DoS is located at 2201 C Street, N.W. in Washington, D.C., and has custody and control over the Requested Documents.

## STATEMENT OF FACTS

### President Trump's Muslim Travel Bans

7.      On January 27, 2017 — one week after assuming office — President Trump signed Executive Order 13769, "Protecting the Nation from Foreign Terrorist Entry into the United States" ("First Muslim Ban").  The First Muslim Ban temporarily halted entry of all nationals from seven Muslim-majority countries, temporarily suspended the U.S. Refugee

Admissions Program, established a policy of prioritizing certain religious denominations over others upon resuming the Refugee Program, and indefinitely barred Syrian refugees.

8.     The First Muslim Ban was consistent with President Trump's campaign promise to establish "a total and complete shutdown of Muslims entering the United States" and his persistent inflammatory and hostile statements about Muslim Americans and Muslims generally.

9.     Initial legal challenges to the Trump Administration's First Muslim Ban resulted in preliminary relief from imposition of the key provisions of the Ban.

10.    Following these successful challenges, the Administration issued Executive Order 13780 ("Second Muslim Ban") on March 6, 2017, which instituted a 90-day travel ban against persons from six Muslim-majority countries and a worldwide 120-day suspension of refugee processing.

11.    Nine days later, the U.S. District Court for the District of Hawaii issued a nationwide temporary restraining order against two sections of the Second Muslim Ban — the travel ban and refugee-suspension provisions.

12.    The U.S. District Court for the District of Maryland also issued a preliminary injunction against the travel ban section the following day.

13.    The U.S. Court of Appeals for the Fourth Circuit upheld the District of Maryland's decision in substantial part on May 25, 2017.

14.    The United States Court of Appeals for the Ninth Circuit upheld the District of Hawaii's injunction in principal part on June 12, 2017.

15.    On June 26, 2017, the U.S. Supreme Court granted the Administration's petition for certiorari to review the preliminary relief affecting implementation of the Second Muslim Ban.

16.     On that day, the U.S. Supreme Court also stayed the preliminary relief to the extent that relief applied to protect foreign nationals who lack a "bona fide relationship with a person or entity in the United States."

17.     Following briefing, but before oral argument, on September 24, 2017, the Administration issued the Proclamation signed by President Trump.

18.     The Proclamation restricts entry of persons into the United States from six Muslim-majority countries (and two non-Muslim majority countries), including those with bona-fide relationships with U.S. citizens and lawful permanent residents.

19.     The Proclamation also states that it is based on a "worldwide review" of information-sharing practices, policies, and capabilities of foreign countries and the conclusion that the countries named in the Proclamation have "'inadequate' identity-management protocols, information-sharing practices, and risk factors" or otherwise merit "entry restrictions, limitations, and other measures."

20.     Such "worldwide review" was ordered by the Second Muslim Ban, which directed the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, to "identify whether, and if so what, additional information will be needed from each foreign country to adjudicate an application by a national of that country for a visa, admission, or other benefit under the INA (adjudications) in order to determine that the individual is not a security or public-safety threat."

21.     The results of that worldwide review were submitted to President Trump in a report issued by the Secretary of Homeland Security on July 9, 2017.

22.     According to the Proclamation, the July 9 report detailed the kinds of information required from foreign governments to avoid travel restrictions, a description of the information

provided by the foreign governments, and a list of countries whose information was adequate, inadequate, or at risk of being inadequate.

23.     According to the Proclamation, following the July 9 report, Defendant DoS further engaged with the countries that had been reviewed with respect to the information that they had provided.

24.     Purportedly based on this review and engagement, on September 15, 2017, the Secretary of Homeland Security submitted a report to President Trump recommending travel restrictions for nationals of the countries included in the Proclamation.

**Plaintiff's FOIA Request**

25.     On July 20, 2017, Plaintiff and others (collectively, "Requesters") submitted a FOIA request to Defendant for 23 categories of records related to the Administration's travel bans.  Consistent with FOIA, Requesters asked Defendant to refer the request to the White House, the U.S. Department of Justice, the U.S. Department of Homeland Security, and U.S. Customs and Border Protection, as appropriate.  Requesters further requested expedited processing and a fee waiver.  The FOIA request is attached as **Exhibit B**.

26.     As is relevant here, the FOIA request includes a request for:

  w. All records pertaining to the worldwide review process conducted under Section 2 of Executive Order 13780 and 17 STATE 72000, including the Report that was submitted to President Trump, copies of instructions to foreign governments regarding the requirements that must be met to avoid travel restrictions, and a list of all countries that have:
    i.   been designated as providing adequate information to the U.S. government;
    ii.  been designated as providing inadequate information to the U.S. government; and/or
    iii. been designated as being at risk of providing inadequate information to the U.S. government.

27.     The Requested Documents (as defined in paragraph 2 above) are a discrete subset of the documents covered by request "w."  The Requested Documents are the only records at issue in this action.[1]

**Defendant's Interim Responses**

28.     On July 24, 2017, Defendant granted Requesters' request for expedited processing and for a fee waiver.

29.     Defendant's response, however, did not indicate the scope of the documents that it would produce or the exemptions it would claim, if any, with respect to the FOIA request.

30.     Defendant's response also did not provide an estimated date for production of the responsive records.

31.     Instead, Defendant's response states only that "[w]e will notify you as soon as responsive material has been retrieved and reviewed."  Defendant's July 24, 2017 response is attached as **Exhibit C**.

32.     On August 18, 2017, after hearing nothing further from Defendant, Requesters contacted Defendant by phone and were informed that Defendant expected to complete production by October 31, 2017.

33.     Counsel for Requesters memorialized the August 18 conversation in an August 24, 2017 email, attached as **Exhibit D**.

34.     Defendant responded with a form email on August 28, 2017, attached as **Exhibit E**.

---

[1] Plaintiff does not waive its right to seek judicial relief with respect to the balance of its initial FOIA request, attached hereto as **Exhibit B**.

35.     Requesters have heard nothing further from Defendant with respect to the FOIA request.

**The Need to Expedite the Production of the Requested Documents**

36.     The Requested Documents are matters of intense public interest.

37.     The Administration's latest iteration of the Muslim ban — the Proclamation — went into effect immediately for those persons subject to the entry restrictions established by the Second Muslim Ban, as amended by the U.S. Supreme Court to carve out those persons with a bona fide relationship with the United States.

38.     The remaining terms of the Proclamation go into effect on October 18, 2017.

39.     Courts have held every iteration of the Muslim ban before the Proclamation to merit preliminary relief on the ground that the ban is unconstitutional.

40.     Like the Muslim bans that preceded the Proclamation, and as recognized by courts across the nation, "the Government's asserted national security interest [therein] . . . appears to be a post hoc, secondary justification for an executive action rooted in religious animus and intended to bar Muslims from this country." *Int'l Refugee Assistance Proj. v. Trump*, 857 F.3d 554, at 603 (4th Cir. 2017).

41.     The Requested Documents are essential to assess the Administration's latest justification for the Muslim ban.

42.     As accepted by Defendant itself, when it granted Requester's request for expedited processing:

   a.   "[T]here is a compelling need for expedited processing because Request[e]rs require the records requested to effectively inform the public about new federal procedures already affecting individuals' civil rights."

   b.   "[F]ailure to release this information will impair due-process rights and harm humanitarian interests."

43.     Expedition is also warranted due to the quickly-approaching October 18 implementation date of the policy reflected in the Proclamation.

44.     The Proclamation, like the prior Muslim bans, appears, on its face, to violate the constitutional guarantee that the government will not establish, favor, discriminate, or condemn any religion because it is directed at Muslim-majority countries and was announced in the context of prior failed attempts to violate the Constitution more directly.

45.     The Proclamation, like the prior Muslim bans, appears, on its face, to violate the constitutional guarantee of equal protection because it is motivated by animus and is not justified by legitimate, important, or compelling governmental interests.

46.     The Proclamation, like the prior Muslim bans, appears, on its face, to violate the constitutional guarantee of freedom of speech because it bars U.S. entities from receiving information and ideas by banning the physical presence of nationals of the affected countries.

47.     The Proclamation, like the prior Muslim bans, appears, on its face, to violate the constitutional guarantee of procedural due process because it deprives immigrants and refugees from the affected countries of the statutory rights and prescribed procedures applicable to them and deprives U.S. citizens of travel by specific non-citizen family members to the United States.

48.     The Proclamation, like the prior Muslim bans, appears, on its face, to exceed the President's authority under the Immigration and Nationality Act ("INA") and to violate the INA because it discriminates against persons on the basis of nationality while disregarding the statutory criteria for determining terrorism-related inadmissibility.

49.     Finally, the intense public interest regarding the Proclamation is evidenced by articles published by, for example, The Washington Post, The New York Times, U.S. News & World Report, The Los Angeles Times, and the Associated Press.

50.     For all these reasons, expedition in ordering release of the Requested Documents is warranted.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552, for Improperly Withholding Agency Records)

51.     Plaintiff re-alleges paragraphs 1 through 50 as if fully set forth herein.

52.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), an agency is required to make a determination on a FOIA request within twenty business days of receipt of such request and "shall immediately notify the person making such request of such determination and the reasons therefor."

53.     Under 5 U.S.C. § 552(a)(6)(B)(i), an agency may extend the deadline to make that determination by ten business days if "by written notice" it asserts that there are "unusual circumstances" and if it asserts "the date on which a determination is expected to be dispatched."

54.     Defendant failed to toll its twenty-day statutory deadline to make its determination because it did not assert "unusual circumstances."

55.     Defendant did not make a determination on Plaintiff's request within the twenty business days required by law.

56.     Even if Defendant had asserted "unusual circumstances," it would have been required to make a determination within 30 business days after receipt of the request.  5 U.S.C. § 552(a)(6)(B)(i).

57.     Defendant did not make a determination on Plaintiff's request within 30 days.

58.     Accordingly, Plaintiff has exhausted administrative remedies with respect to its request.  5 U.S.C. § 552(a)(6)(C)(i).

59.     Plaintiff has a right of access to the Requested Documents under 5 U.S.C. § 552(a)(3), and there is no legal basis for Defendant to withhold them.

9

60.     Defendant is improperly withholding agency records responsive to Plaintiff's request.

61.     Plaintiff is being harmed by reason of Defendant's unlawful withholding of the Requested Documents, and Plaintiff will continue to be harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Issue an order expediting Defendant's filing of a *Vaughn* index for the Requested Documents, or portions thereof, that Defendant claims are exempt from production;

B.     Declare that Defendant has violated FOIA by improperly withholding the Requested Documents and compel Defendant to produce the Requested Documents expeditiously pursuant to 5 U.S.C. §§ 552(a)(4)(B), (6)(E);

C.     Enjoin Defendant from withholding the Requested Documents and order production of the Requested Documents to Plaintiff pursuant to 5 U.S.C. § 552(a)(4)(B) promptly and by a date certain;

D.     Issue an order overruling any exemptions Defendant may assert and compelling Defendant to produce the Requested Documents in full, promptly, and by a date certain;

E.     Award Plaintiff reasonably attorneys' fees and other litigation costs reasonably incurred pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

F.     Award any other relief the Court may deem just and proper.

Respectfully submitted,

October 2, 2017

 s/ Neil K. Roman

Neil K. Roman (Bar No. NR6012)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405

Mark H. Lynch[i]
Jaclyn E. Martínez Resly[i]
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001

Johnathan Smith (Bar No. JS3221)
Sirine Shebaya[ii]
MUSLIM ADVOCATES
P.O. Box 66408
Washington, DC 20035

[i] *Pro hac vice* application forthcoming
[ii] Application for admission forthcoming