UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1|10|18

BRENNAN CENTER FOR JUSTICE AT
NEW YORK UNIVERSITY SCHOOL OF
LAW,

                Plaintiff,

        - against -

UNITED STATES DEPARTMENT OF
STATE,

                Defendant.

**MEMORANDUM
OPINION & ORDER**

17 Civ. 7520 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

           Plaintiff Brennan Center for Justice brings this action against Defendant U.S.

Department of State to compel compliance with the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552. (Cmplt. (Dkt. No. 1) ¶ 1) Plaintiff seeks documents referenced in President

Trump's September 24, 2017 Proclamation[1] entitled "Enhancing Vetting Capabilities and

Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public

Safety Threats[.]" (Id. ¶ 2, Ex. A (Proclamation) (Dkt. No. 1-1); see also Proclamation No.

9,645, 82 Fed. Reg. 45,161 (Sept. 24, 2017)) Only six documents are at issue: "two reports (and

associated attachments)." (Stein Decl. (Dkt. No. 26) ¶ 9)

---

[1] "While an executive order constitutes perhaps the most widely discussed form in which a
presidential directive may be issued, it is not the only type of presidential order. Presidents may
also issue proclamations. . . . In general, however, the difference is typically one of form, not
substance," and "the Supreme Court has held that there is no difference between the two in terms
of legal effect." Tara L. Branum, President or King? The Use and Abuse of Executive Orders in
Modern-Day America, 28 J. Legis. 1, 6-7, 86 n. 16 (2002) (citing Wolsey v. Chapman, 101 U.S.
755, 770 (1879)).

On December 22, 2017, Plaintiff moved to expedite this action pursuant to 28

U.S.C. § 1657. (Mot. (Dkt. No. 22)) Plaintiff seeks an order requiring Defendant "to produce

the [requested] documents (or all segregable non-exempt portions thereof) within 21 days[,]" and

to provide "written justification for any withheld documents or portions of documents" –

commonly referred to as a Vaughn index – within 28 days. (Pltf. Reply (Dkt. No. 27) at 2; Pltf.

Br. (Dkt. No. 23) at 13)

## BACKGROUND

On January 27, 2017, President Trump issued Executive Order No. 13,769 –

"Protecting the Nation from Foreign Terrorist Entry into the United States" ("EO–1"), 82 Fed.

Reg. 8977 (Jan. 27, 2017) – which bars entry into the United States of individuals from seven

Muslim-majority countries for 90 days, suspends the United States Refugee Admission Program

for 120 days, and bans the entry of Syrian refugees indefinitely. See EO-1, 82 Fed. Reg. 8,977,

§§ 3(c), 5(a), 5(c). Shortly thereafter, several courts enjoined implementation of this executive

order. See, e.g., Washington v. Trump, No. C17-0141 (JLR), 2017 WL 462040, at *3 (W.D.

Wash. Feb. 3, 2017), appeal dismissed, No. 17-35105, 2017 WL 3774041 (9th Cir. Mar. 8,

2017); Aziz v. Trump, 234 F. Supp. 3d 724, 739 (E.D. Va. 2017).

On March 6, 2017, President Trump issued Executive Order 13,780 ("EO–2"),

"Protecting the Nation From Foreign Terrorist Entry Into the United States," 82 Fed. Reg. 13,209

(Mar. 6, 2017). EO-2 revokes EO-1 and suspends entry into the United States of nationals from

Iran, Libya, Somalia, Sudan, Syria, and Yemen for 90 days. See EO-2, 82 Fed. Reg. 13,209, §

2(c). EO-2 also directs a "worldwide review to identify whether, and if so what, additional

information will be needed from each foreign country to adjudicate an application by a national

of that country for a visa, admission, or other benefit under the [Immigration and Nationality

2

Act] . . . in order to determine that the individual is not a security or public-safety threat." Id. §

2(a). EO-2 instructs the "Secretary of Homeland Security, in consultation with the Secretary of

State and the Director of Intelligence . . . [to] submit to the President a report on the results of

worldwide review[.]" Id. § 2(b).  Several courts also issued nationwide injunctions enjoining

implementation of this executive order. See, e.g., Hawai'i v. Trump, 245 F. Supp. 3d 1227, 1237

(D. Haw.); Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 606 (4th Cir. 2017).  On

June 26, 2017, the U.S. Supreme Court granted the Government's petition for certiorari to review

lower courts' grant of injunctive relief related to EO-2.  (Cmplt. (Dkt. No. 1) ¶ 15)

On July 20, 2017, Plaintiff submitted a FOIA request to Defendant for "23

categories of records related to the [Government's] travel bans." (Cmplt. (Dkt. No. 1) ¶ 25;

Cmplt., Ex. B (FOIA Request) (Dkt. No. 1-2))  The FOIA request seeks:

> All records pertaining to the worldwide review process conducted under Section 2 of
> Executive Order 13780 and 17 STATE 72000, including the Report that was submitted to
> President Trump, copies of instructions to foreign governments regarding the
> requirements that must be met to avoid travel restrictions, and a list of all countries that
> have:
>> i. been designated as providing adequate information to the U.S. government;
>> ii. been designated as providing inadequate information to the U.S. government;
>> and/or
>> iii. been designated as being at risk of providing inadequate information to the
>> U.S. government.

(Cmplt. (Dkt. No. 1) ¶ 26)

On July 24, 2017, the State Department granted Plaintiff's request for expedited

processing and for a fee waiver:

> After consideration of your request for expedited processing under the Department's
> rules governing Freedom of Information Act requests, we have determined that your
> request does warrant expedited processing.  We have considered your request for a fee
> waiver.  Based upon the information provided in your letter, your request for a fee waiver
> has been granted[.]

(Cmplt., Ex. C (State Department Initial Response) (Dkt. No. 1-3) at 2)

3

On August 18, 2017, the State Department informed Plaintiff that it expected to make production by October 31, 2017. (Cmplt. (Dkt. No. 1) ¶ 32)  To date, however, Plaintiff has received no documents in response to its FOIA request. (Id. ¶ 35)

On September 24, 2017, President Trump issued Proclamation 9,645 (the "Proclamation"). (Id. ¶ 17; Proclamation No. 9,645, 82 Fed. Reg. 45,161 (Sept. 24, 2017))  The Proclamation restricts entry into the United States of individuals from "six Muslim-majority countries (and two non-Muslim majority countries)": Chad, Iran, Libya, Syria, Yemen, Somalia, Venezuela, and North Korea. (Cmplt. ¶ 18; Proclamation No. 9,645, 82 Fed. Reg. 45,161, §§ 2(a)-(g))

The Proclamation justifies these entry restrictions on the basis of the "worldwide review" of the "information-sharing practices, policies, and capabilities of foreign governments" directed in EO-2 (See Proclamation No. 9,645, 82 Fed. Reg. 45,161, §§ 1(c), (i))  The Proclamation states that – after conducting this "worldwide review" – the Secretary of State "engaged with the countries reviewed in an effort to address deficiencies and achieve improvements." (Proclamation No. 9,645, 82 Fed. Reg. 45,161)  However, "a small number of countries . . . remain deficient . . . with respect to their identity-management and information-sharing capabilities, protocols, and practices[ and i]n some cases, these countries also have a significant terrorist presence within their territory." (Id.)  Accordingly, the Proclamation announces "certain conditional restrictions and limitations . . . on entry into the United States of nationals of the countries identified [as deficient.]" (Id.)

The Proclamation cites several reports on which Executive Branch officials relied, including July 9, 2017 and September 15, 2017 reports submitted by the Secretary of Homeland Security to President Trump. (See id. §§ 1(c), (h))

4

On October 10, 2017, Plaintiff filed this action, which seeks a subset of the

documents sought in its FOIA request – namely, the July 9, 2017 and September 15, 2017

reports, as well as "any other reports detailing the conclusions of [any] 'worldwide review' for

the eight countries covered by the Proclamation and the sixteen countries that the Secretary of

Homeland Security identified as being 'inadequate,' to the extent not included in the July and

September reports." (Cmplt. (Dkt. No. 1) ¶ 2; see also Pltf. Br. (Dkt. No. 23) at 6.) Defendant

has identified six responsive documents: "the two reports (and associated attachments)

submitted by the Secretary of the Department of Homeland Security ("DHS") to the President."

(Stein Decl. (Dkt. No. 26) ¶ 9)

On November 10, 2017, Jaclyn Martinez Resly – an attorney representing the

Brennan Center – sent an email to Assistant U.S. Attorney ("AUSA") Chris Connelly stating that

Plaintiff believed that "a rolling production of responsive records and a rolling 'draft' Vaughn

index are appropriate [because, f]or example, the July 9 and September 15 reports . . . are readily

identifiable and are reasonably discrete documents that can be reviewed quickly[.]" (Resly Decl.

(Dkt. No. 24) ¶¶ 3-4; Resly Decl., Ex. F (November 15, 2017 email chain) (Dkt. No. 24-6) at 2)

Resly proposed that the July 9 and September 15 reports be produced first, "along with the

justification for withholding any parts of them that are claimed to be exempt." (Resly Decl., Ex.

F (November 15, 2017 email chain) (Dkt. No. 24-6) at 2)

In a November 15, 2017 email response, AUSA Connelly states:

We would like to agree to a reasonable schedule for processing the records responsive to
your request, producing any non-exempt information, and briefing the government's
claimed exemptions. Right now, however, we are still working on determining dates that
we can propose. The records in question are highly classified and subject to handling
controls that complicate their dissemination and review. Further, the documents contain
equities belonging to several different agencies, all of whom will need to be involved in
the review process. We are working to coordinate this process so that we can discuss a
schedule with you, but unfortunately aren't able to propose a firm date today.

5

(Id.)

On December 21, 2017, Plaintiff moved to expedite this action. (See Mot. (Dkt. No. 22)) As noted above, Defendant opposes Plaintiff's request, arguing that Plaintiff's proposed schedule is not "practicable." (See Def. Br. (Dkt. No. 25)) Defendant proposed no alternative schedule in its briefing, however. (See id.)

On January 4, 2018, this Court conducted a telephone conference with the parties.[2] This Court expressed concern about the amount of time that had passed since Plaintiff first filed its FOIA request – nearly six months – and asked the Government how much time it believed was necessary to make production of non-exempt materials, and provide justification for any materials withheld. The Government stated that it required an additional 90 days to make production of non-exempt materials. The Government also reiterated its position that production of a Vaughn index should not be required until the parties had filed cross-motions for summary judgment. (See Def. Br. (Dkt. No. 25) at 5) Plaintiff objected to the Government's request for an additional 90 days, noting that its FOIA request had been pending for nearly six months, and that nothing had been produced during that time.

---

[2] No transcript of this conference is available, because the courthouse was closed due to inclement weather.

## DISCUSSION

## I.    MOTION TO EXPEDITE

In contending that Defendant should be required "to produce the [requested] documents (or all segregable non-exempt portions thereof) within 21 days[,]" and to provide "written justification for any withheld documents or portions of documents within 28 days" (Pltf. Reply (Dkt. No. 27) at 2; Pltf. Br. (Dkt. No. 23) at 13), Plaintiff argues that FOIA actions are "especially appropriate for expedition." Plaintiff also contends that there is enormous public interest in the travel bans, and notes that the State Department has acknowledged that Plaintiff's FOIA request warrants expedited processing. (Pltf. Br. (Dkt. No. 23) at 8-13 (quoting Cmplt., Ex. C (State Department Initial Response) (Dkt. No. 1-3))

Defendant reiterates that Plaintiff's proposed schedule for production is "not practicable[,]" and that no Vaughn index should be required until the filing of cross-motions for summary judgment. (Def. Br. (Dkt. No. 25) at 3-6)

### A.    Applicable Law

"Congress enacted FOIA to . . . provide a means of accountability, to allow Americans to know what their government is doing." Am. Civil Liberties Union ("ACLU") v. Dep't of Def., 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (citing Halpern v. FBI, 181 F.3d 279, 284-85 (2d Cir. 1999)); Elec. Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 36 (D.D.C. 2006) ("The purpose of providing information to the public is 'to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed.'") (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1976)). In amending FOIA in 1974, "Congress evinced an increasing concern over the timeliness of disclosure, recognizing that delay in complying with FOIA

7

requests may be 'tantamount to denial.'" ACLU, 339 F. Supp. 2d at 504 (quoting H. Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News, 6267, 6271). The FOIA statute reflects a "preference for the fullest possible agency disclosure of such information consistent with a responsible balancing of competing concerns[.]" Halpern, 181 F.3d at 284.

National security is an example of one such competing concern. ACLU, 339 F. Supp. 2d at 504 (citing 5 U.S.C. § 552(b)(1) (exempting matters that are "established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order")). However, "[m]erely raising national security concerns cannot justify unlimited delay," and "[i]t is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner and the government's contention that national security concerns prevent timely disclosure or identification." Id.

FOIA "requires the executive, in response to duly made demands, [to] promptly . . . produce requested documents, or to provide justification why the documents may be exempt from production." Id. at 503 (citing 5 U.S.C. § 552 (2004)). More specifically, FOIA requires an agency to determine, "within twenty working days, whether or not to comply with a FOIA request." Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 36; 5 U.S.C. § 552(a)(6)(A)(i) ("Each agency, upon any request for records . . . shall determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor. . . ."). "An agency's failure to comply with [the statute's] time limits may be treated as 'constructive exhaustion' of administrative remedies," and authorizes "the requester to seek judicial review immediately." Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 36 (citing 5 U.S.C § 552(a)(6)(C)(i)).

8

Recognizing the "difficulties in processing all FOIA requests within 20 days,

[courts] have permitted the executive to process requests on a first-in-first-out basis[,]" except

where there is exceptional need or urgency for the information. ACLU, 339 F. Supp. 2d at 503

(citing Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976)

("The good faith effort and due diligence of the agency to comply with all lawful demands under

the Freedom of Information Act in as short a time as is possible by assigning all requests on a

first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance

with the Act.")); Bloomberg, L.P. v. United States Food & Drug Admin., 500 F. Supp. 2d 371,

376 (S.D.N.Y. 2007) ("While a general showing of an agency processing FOIA requests on a

first-in, first-out basis, coupled with a multitrack processing system may be consistent with due

diligence in some instances, this determination should not be automatic, and fails if extraordinary

need is demonstrated."). To ensure timely review in cases where exceptional need or urgency is

demonstrated, FOIA includes an additional "requirement that agencies provide for expedited

processing of requests" under certain circumstances. Elec. Privacy Info. Ctr., 416 F. Supp. 2d at

36 (citing 5 U.S.C. § 552(a)(6)(E)).

In this regard, 5 U.S.C. § 552(a)(6)(E) provides:

(E)(i) Each agency shall promulgate regulations . . . providing for expedited processing of requests for records –

(I) in cases in which the person requesting the records demonstrates a compelling need; and

(II) in other cases determined by the agency.

. . . .

(v) For purposes of this subparagraph, the term "compelling need" means –

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

9

(II) with respect to a request made by a person primarily engaged in disseminating information, <u>urgency to inform the public</u> concerning actual or alleged Federal Government activity.

U.S.C. § 552(a)(6)(E). Where expedition is appropriate under 5 U.S.C. § 552(a)(6)(E), an agency must process the request "as soon as practicable." <u>See</u> 5 U.S.C. § 552(a)(6)(E)(iii); <u>Elec. Privacy Info. Ctr.</u>, 416 F. Supp. 2d at 37; <u>ACLU</u>, 339 F. Supp. 2d at 503 (S.D.N.Y. 2004).

"[F]ailure by an agency to respond in a timely manner to [an expedited] request shall be subject to judicial review[.]" 5 U.S.C. § 552(a)(6)(E)(iii); <u>see also</u> 5 U.S.C. § 552(a)(4)(B) ("the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"). Courts "review[] agency decisions, including those regarding expedited processing of FOIA requests, <u>de novo</u>," <u>Bloomberg</u>, 500 F. Supp. 2d at 374, and "[s]peed is an essential element in this process of <u>de novo</u> review[.]" <u>Ferguson v. F.B.I.</u>, 722 F. Supp. 1137, 1144 (S.D.N.Y. 1989) (citing H.R. Rep. No. 985, 98th Cong., 2d Sess. 6, reprinted in 1984 U.S. Code Cong. & Admin. News 5708, 5779, 5783 ("Civil Priorities Act Report") ("Prompt review of decisions denying access to government information is critical to FOIA users and to the purposes of the Act.")). Under the Civil Priorities Act, district courts must

expedite the consideration of any action . . . if "good cause" therefor is shown. For purposes of this subsection, "good cause" is shown if a right under . . . a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit.

28 U.S.C. § 1657(a). Congress intended for the "good cause" provision to "'be liberally construed by the courts in granting requests for expedited consideration under [FOIA].'" <u>Ferguson</u>, 722 F. Supp. at 1144 (quoting Civil Priorities Act Report at 5784).

A court may also order expedited compilation and production of a <u>Vaughn</u> index. "A <u>Vaughn</u> index 'require[s] agencies to itemize and index the documents requested, segregate

their disclosable and non-disclosable portions, and correlate each non-disclosable portion with the FOIA provision which exempts it from disclosure.'" Ferguson, 722 F. Supp. at 1144 (quoting Brown v. Fed. Bureau of Investigation, 658 F.2d 71, 73 (2d Cir. 1981)). This is often a "necessary aspect of FOIA litigation because, in the typical case, only the agency knows the exact nature of the documents . . . being withheld[, and] . . . [t]he party seeking to obtain documents usually can only speculate on their contents." Brown, 658 F.2d at 73-74. The "procedure is intended to restore the adversarial balance needed to allow the court to reach a just and fair result." Id. at 74. Accordingly, courts have interpreted the Civil Priorities Act's "expedition mandate to [similarly] apply to the scheduling of Vaughn index preparation, because an index is an integral component of trial court review of FOIA challenges to non-disclosure of information." Ferguson, 722 F. Supp. at 1144

## B.    Analysis

Here, "there is no dispute that [Plaintiff's] FOIA requests are entitled to expedited processing," because the State Department conceded that Plaintiff's FOIA request "warrant[s] expedited processing." (Cmplt., Ex. C (State Department Initial Response) (Dkt. No. 1-3) at 2); Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 34, 37 (Plaintiff's FOIA requests were entitled to expedited processing because the relevant Department of Justice components "conceded that expedited processing was appropriate" by granting Plaintiff's request for expedited processing). Moreover, given the "great public and media attention that the Government's [entry restrictions] have garnered[,]" the public interest is served "by the expedited release of the requested documents[.]" See Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 42 (holding that public interest was served by timely public disclosure of records related to warrantless surveillance program, given public and media attention). Accordingly, what remains in dispute is (1) whether

11

Plaintiff's proposed 21-day production schedule is "practicable" under 5 U.S.C.

§ 552(a)(6)(E)(iii), and (2) whether Plaintiff's request for production of a Vaughn index within 28 days is premature. (See Def. Br. (Dkt. No. 25) at 3-6)

Defendant argues that Plaintiff's proposed schedule is not "practicable" because (1) the State Department referred the FOIA request to the Department of Homeland Security ("DHS") for review, and release of the requested records is now in the hands of DHS; (2) the State Department has been expeditious in its processing given its FOIA case load and the "broad and complex" nature of Plaintiff's request; and (3) the records Plaintiff seeks contain national security information, and the White House and several other agencies must be consulted about their possible release. (Def. Br. (Dkt. No. 25) at 4-6) Defendant further contends that Plaintiff's request for a Vaughn index – prior to the filing of dispositive motions – is premature. (Id. at 5-6)

"The legislative history of the amendments [to FOIA] makes clear that, although Congress opted not to impose a specific deadline on agencies processing expedited requests, its intent was to 'give the request priority for processing more quickly than otherwise would occur.'" Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 39 (quoting S. Rep. No. 104-272, at 17 (1996)) (emphasis in original). Accordingly, "the phrase 'as soon as practicable,' in the context of a provision of FOIA allowing for expedited processing, cannot be interpreted to impose a lower burden on the agency" than the twenty day statutory period that would otherwise be required for standard FOIA requests. See id. (emphasis in original); 5 U.S.C. § 552(a)(6)(A)(i). Courts have therefore concluded that a "prima facie showing of agency delay exists when an agency fails to process an expedited FOIA request within the [twenty day] time limit applicable to standard FOIA requests." Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 39. An agency may

12

rebut this "presumption of agency delay," however, by "present[ing] credible evidence that disclosure within such time period is truly not practicable." Id.

Here, Plaintiff submitted its FOIA request seeking records related to the Government's travel bans on July 20, 2017, and the State Department granted Plaintiff's request for expedited processing on July 24, 2017. (See Stein Decl. (Dkt. No. 26) ¶¶ 1, 4-5; Cmplt. (Dkt. No.1) ¶¶ 25, 28) It has now been nearly six months since Plaintiff's FOIA request was submitted, and nothing has been produced. Nor is there any schedule for production. Accordingly, the presumption of agency delay applies.

Moreover, Defendant has not offered evidence rebutting the presumption of agency delay. As an initial matter, Defendant cannot evade responsibility for failing to produce the requested records by referring the request to DHS or other Executive Branch components for review. It is well-settled that the referring agency "is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request, [and that] a referral of records could constitute an improper withholding if the 'net effect [of the referral procedure] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.'" Plunkett v. Dep't of Justice, 924 F. Supp. 2d 289, 305 (D.D.C. 2013) (quoting Peralta v. U.S. Attorney's Office, 136 F.3d 169, 175 (D.C. Cir. 1998)); see also Hall v. C.I.A., 881 F. Supp. 2d 38, 56 (D.D.C. 2012) ("The CIA goes on to state that it 'has fulfilled its obligation and has no power or control over the actions of another federal agency. . . . [T]he CIA's response is not only baffling, but the failure to produce the documents amounts to an improper withholding."); Grove v. Dep't of Justice, 802 F. Supp. 506, 518 (D.D.C. 1992) ("The FBI may refer documents to their originating agencies and enlist the agencies' assistance in making a release determination[, but] the FBI cannot avoid its own obligation to

13

respond to the FOIA request with respect to these forwarded documents. . . . [T]he FBI must either release the information or explain to plaintiff which exemption applies.").

Moreover, Defendant's claim that Plaintiff's request is "broad and complex," and "burdensome" in light of the State Department's backlog of FOIA requests, (see Def. Br. (Dkt. No. 25) at 4), is not supported by the record. Although Defendant argues that Plaintiff's FOIA request contains twenty-three sub-parts, Defendant has conceded that Plaintiff is seeking "only a subset of [these] records in this litigation," and that only "six . . . documents" are actually in dispute. (See Stein Decl. (Dkt. No. 26) ¶ 9; Def. Br. (Dkt. No. 25) at 4)  As to the State Department's backlog of generalized FOIA requests, Defendant has acknowledged that "[p]rocessing expedited FOIA cases takes precedence over processing other non-expedited FOIA cases," and that there are only 130 expedited requests currently pending. (See Stein Decl. (Dkt. No. 26) ¶¶ 10, 12)  Accordingly, Defendant has not demonstrated that production of the non-exempt portions of the six documents at issue – with an explanation as to which exemptions apply to material that is withheld – would be overly burdensome. See Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 40 (defendant's "vague assertions [that Plaintiff's request was broad], unsupported by credible evidence, are insufficient to demonstrate that further delay is currently necessitated").

Although Defendant has invoked national security concerns as a reason for its delay, "courts often find that one to two months is sufficient time for an agency to process broad FOIA requests that may involve classified or exempt material." Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 40 (citing ACLU, 339 F. Supp. 2d at 504-05 (ordering production of all responsive documents within one month); Judicial Watch, Inc. v. Dep't of Energy, 191 F.Supp.2d 138, 140-41 (D.D.C. 2002) (ordering agencies to process over 6000 pages of material within 60

14

days); NRDC v. Dep't of Energy, 191 F.Supp.2d 41, 43 (D.D.C. 2002) (ordering the "vast majority" of the processing of 7500 pages to be completed within 32 days)).

        Here, the State Department has had nearly six months to respond to Plaintiff's FOIA request. Given that the documents at issue "have been produced to others, [and] . . . are known to exist, degrees of classification have [presumably] been determined for many of them." See ACLU, 339 F. Supp. 2d at 505. Moreover, "before it can be determined if [the] documents requested by plaintiffs fall under [any national security] exemptions, the documents must first be identified, by some form of log, to enable a specific claim of exemption to be asserted and justified." Id. at 504. In this context, "to permit further delays in disclosure or providing justification for not disclosing would subvert the intent of FOIA." Id. at 505.

        Defendant's argument that production of a Vaughn index is premature prior to summary judgment is not persuasive. While some courts have held that the production of a Vaughn index is not required until after dispositive motions are filed, "these cases state no rule and other courts have not followed this procedure[.]" Providence Journal Co. v. U.S. Dep't of Army, 769 F. Supp. 67, 69 (D.R.I. 1991). Indeed, it is well-established that "[a]gainst the backdrop of the anti-delay policy of FOIA, district courts . . . balance[] the same equities pertinent to the timing of a response to a FOIA document request in their determinations of the appropriate timing of a response to a Vaughn index request." Ferguson, 722 F. Supp. at 1144; see also Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 42-43 (directing production of all responsive records within 20 days, and compilation of a Vaughn index within 30 days); ACLU, 339 F. Supp. 2d at 505 (ordering production of all non-exempt responsive documents within 30 days, and production of a Vaughn index at the same time); Ferguson v. F.B.I., 729 F. Supp. 1009, 1012 (S.D.N.Y. 1990) (finding "no merit to defendant's contentions that plaintiff's request for an index

is premature and that a detailed Vaughn index is unnecessary . . . [where t]he defendant ha[d] already] made the decision to refuse to disclose certain documents").

Moreover, given that "[D]efendant has not even indicated when it plans to file [a dispositive] motion[,] '[i]t would be unfair to allow [Defendant] months to prepare its case and then force [Plaintiff] to formulate [its] entire case within [the short time it would] have to respond to that motion.'" Providence Journal Co., 769 F. Supp. at 69 (quoting Hansen v. U.S. Dep't of Air Force, No. CIV. A. 91-0099-LFO, 1991 WL 199748, at *1 (D.D.C. Apr. 15, 1991)); see also Keeper of Mountains Found. v. U.S. Dep't of Justice, No. 2:06-CV-00098, 2006 WL 1666262, at *3 (S.D.W. Va. June 14, 2006). While "a Vaughn Index is not . . . required . . . 'where it is not [necessary] to restore the traditional adversary process" – because the "requestor ha[s] acquired sufficient facts to permit the adversary process to function" – here the State Department has provided no information regarding the exemptions it plans to claim. See Providence Journal Co., 769 F. Supp. at 69. Accordingly, directing production of a Vaughn index is a "more efficient and fair approach." See, e.g., Keeper of Mountains Found., 2006 WL 1666262, at *3.

Because (1) Plaintiff has demonstrated that its FOIA request merits expedited treatment, and (2) Defendant has not rebutted the presumption of agency delay, Plaintiff's motion to expedite will be granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to expedite is granted. Defendant will produce all non-exempt materials and a declaration – consistent with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) – explaining what exemptions apply to any materials withheld. Both

16

the production of non-exempt materials and the Vaughn index will be produced by February 9,

2018. The Clerk of the Court is directed to terminate the motion (Dkt. No. 22).

Dated: New York, New York
      January 10, 2018

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge