UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRENNAN CENTER FOR JUSTICE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 17-cv-07520 |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| STATE | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State"), and have served in this capacity since January 22, 2017.  Previously, I served as the Acting Director of IPS since October 16, 2016, and as the Acting Co-Director of IPS since March 21, 2016.  In my current capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions.

2.      Prior to serving in this capacity, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.  As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information.

3.      The core responsibilities of IPS include:  (1) responding to records access requests made by the public (including under FOIA, the Privacy Act, and the mandatory declassification

review requirements of Executive Order No. 13,526, governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process, such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

4.      I respectfully submit this declaration in support of the State Department's motion for summary judgment in the above-captioned matter.  I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.  I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and recovery efforts with respect to those requests.

5.      This declaration explains the Department's search for responsive records and the FOIA exemptions the Department has applied to the responsive records.

## I.      Summary of Plaintiff's FOIA Request

6.      By letter dated July 20, 2017 (ECF No. 1-2), Plaintiff submitted a FOIA request to the Department, seeking various records related to Executive Orders 13,769 and 13,780.

7.      By letter dated July 24, 2017 (ECF No. 1-3), IPS acknowledged receipt of Plaintiff's request and assigned it Case Control No. F-2017-13846.

8.      On October 2, 2017, Plaintiff filed a lawsuit in federal district court for a narrow subset of the records requested in Request No. F-2017-13846.  Specifically, in paragraph 2 of the Complaint (ECF No. 1), Plaintiff sought disclosure of:

*Brennan Center for Justice v. Dep't of State*
                                                            No. 1:17-cv-07520
                                                            Second Stein Declaration

a.  The report submitted by the Secretary of the Department of Homeland Security to President Trump on July 9, 2017, referred to in Section 1(c) of the Proclamation issued by President Trump on September 24, 2017, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" (the "Proclamation," attached as Exhibit A);

b.  The report submitted by the Secretary of Homeland Security to President Trump on September 15, 2017, referred to in Section 1(h) of the Proclamation;

c.  If not included in the reports referred to in Sections 1(c) and 1(h) of the Proclamation, the final reports submitted by the Secretary of Homeland Security to President Trump on each of the eight countries identified in Section 2 of the Proclamation, i.e., Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia; and

d.  If not included in the reports referred to in Sections 1(c) and 1(h) of the Proclamation, the final reports submitted by the Secretary of Homeland Security to President Trump on the sixteen countries identified by the Secretary as being "inadequate," referred to in Section 1(e) of the Proclamation, to the extent that they were not included in the list of seven countries in Section 1(h)(ii).

9.  By letter dated December 5, 2017 (ECF No. 26-1), the Department informed Plaintiff that it had located records responsive to the portion of the request described in paragraph 2 of the Complaint, and that all of those records originated with the Department of Homeland Security ("DHS") and were being referred to that agency for review and direct reply to Plaintiff. [1]

10.  Following referral, the Department reviewed the records for State Department equities and asserted two of FOIA's statutory exemptions, Exemption 1 and Exemption 7, over portions of three of the records.

11.  By letter dated February 9, 2018, the government responded to Plaintiff indicating that it was withholding the records in full pursuant to Exemption 5 (Presidential

---

[1] The Department initially reported identifying six responsive records, but has since clarified that it only identified five responsive records—due to the way that the records were uploaded into the Department's electronic system, one document was given two cadre numbers, C06476508 and C06476510.

*Brennan Center for Justice v. Dep't of State*
No. 1:17-cv-07520
Second Stein Declaration

Communications Privilege), and in part pursuant to other exemptions, including the exemptions that State asserted. A copy of the government's letter is attached to this declaration as Exhibit 1. Also on February 9, 2018, the government provided Plaintiff with a preliminary *Vaughn* index describing the responsive records and identifying the exemptions the government asserted over all or part of each record. An updated version of the government's *Vaughn* index is attached to this declaration as Exhibit 2.

## II.    DESCRIPTION OF THE SEARCH

12.    When the Department receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within State may reasonably be expected to contain the records requested. This determination is based on the description of the records requested and requires a familiarity with the holdings of State's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions.

13.    Each office within State, as well as each Foreign Service post and mission, maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission. These files consist generally of working copies of documents, information copies of documents maintained in the State Archiving System, and other documents prepared by or furnished to the office in connection with the performance of its official duties, as well as electronic copies of documents and e-mail messages.

14.    When conducting a search in response to a FOIA request, IPS relies on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to house responsive records and the best means of locating such records, as those employees are in the best position to know how their files are organized.

Additionally, those employees are also in the best position to determine which search terms would yield potentially responsive records in a given system.

15. After reviewing the portions of the Complaint describing the records Plaintiff sought to have disclosed, IPS determined that the Bureau of Consular Affairs ("CA") was likely to have responsive records.

16. CA is responsible for the welfare and protection of U.S. citizens abroad, for the issuance of passports and other documentation to citizens and nationals, and for the protection of U.S. border security and the facilitation of legitimate travel to the United States.

17. Within CA, the Office of Visa Services ("CA/VO") is responsible for all aspects of visa services for foreign nationals who wish to enter the United States. CA/VO interprets visa laws and regulations and acts as a point of contact for the public. CA/VO serves as a liaison with DHS and between the Department of State in Washington, DC, and embassies and consulates abroad on visa matters.

18. A staff assistant searched the CA-VO Special Assistant classified email account to locate the documents specifically named in Plaintiff's request using the following search terms: 20 Day Report, 50 Day Report. The time period searched was January 26, 2017 through October 1, 2017.

19. The staff assistant located five responsive documents (a report, a memorandum, and three attachments), and the Department verified with officials who had worked on creating the records that (a) these were the full and final versions of the records described by Plaintiff; and (b) no further records existed that were responsive to the portions of Plaintiff's request described in the Complaint.

*Brennan Center for Justice v. Dep't of State*
No. 1:17-cv-07520
Second Stein Declaration

## III.   DESCRIPTION OF FOIA EXEMPTIONS CLAIMED

### A. FOIA Exemption 1 – National Security Information

20.     5 U.S.C. § 552(b)(1) states that records are exempt from disclosure under the FOIA where they are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and are also "in fact properly classified pursuant to such Executive order."

21.     Based upon my personal review of the documents and information furnished to me in the course of my official duties, I have determined that the information withheld under Exemption 1, 5 U.S.C. § 552(b)(1), continues to meet the classification criteria of E.O. 13,526 and that the Department has not previously authorized or officially acknowledged the public release of this information.  This information includes information classified at the SECRET level.  Section 1.2 of E.O. 13,526 states that

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.

22.     Section 6.1(l) of E.O. 13,526 defines "damage to the national security" as follows:

> "Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

23.     Information withheld in this case under Exemption 1 is properly classified pursuant to Section 1.4(b) and (d) of E.O. 13,526.  Section 1.4 provides:

> Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security in

*Brennan Center for Justice v. Dep't of State*
No. 1:17-cv-07520
Second Stein Declaration

accordance with section 1.2 of this order, and it pertains to one or
more of the following: . . .
(b) foreign government information; . . . [or]
(d) foreign relations or foreign activities of the United States,
including confidential sources . . .

24.     For information to be properly classified and withheld from disclosure pursuant to

Exemption 1, the information must meet all of the following requirements set forth in Section

1.1(a) of E.O. 13,526:

> (1)     an original classification authority is classifying the
> information;
> (2)     the information is owned by, produced by or for, or is
> under the control of the United States Government;
> (3)     the information falls within one or more of the categories
> listed in section 1.4 of [E.O. 13,526]; and
> (4)     the original classification authority determines that the
> unauthorized disclosure of the information reasonably could be
> expected to result in damage to the national security, which
> includes defense against transnational terrorism, and the original
> classification authority is able to identify or describe the damage.

25.     In my role as an original classification authority, I have determined that the

information withheld pursuant to Exemption 1 is under the control of the United States

Government, falls within Sections 1.4(d) of E.O. 13,526, and requires classification at the

SECRET level because its unauthorized disclosure reasonably could be expected to cause serious

damage to the national security.

### Section 1.4(b) – Foreign Government Information

26.     Section 6.1(s) of E.O. 13,526 defines "foreign government information" as

follows:

> "Foreign government information" means:
> (1) information provided to the United States Government by a foreign
> government or governments, an international organization of governments, or any
> element thereof, with the expectation that the information, the source of the
> information, or both, are to be held in confidence;

*Brennan Center for Justice v. Dep't of State*
                                                No. 1:17-cv-07520
                                                Second Stein Declaration

(2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence . . . .

27.    Section 1.1(d) of E.O. 13,526 states:

The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.

28.    The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of foreign government information provided in confidence, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest. In view of the important relationship between the United States and the foreign governments identified in the responsive documents, protecting foreign government information, and in some cases even the fact that information has been provided, is important to our relationship and conduct of foreign relations. For these reasons, the release of the foreign government information withheld in this case could reasonably be expected to cause serious damage to the national security, and this information is currently and properly classified pursuant to Section 1.4(b) of E.O. 13,526 and exempt from disclosure under FOIA Exemption 1.

## Section 1.4(d) - Foreign Relations or Foreign Activities of the United States

29.    Confidentiality is a vital aspect of successful foreign relations. This includes the confidentiality of diplomatic exchanges and information about the nature of other countries'

engagement with the United States, when undertaken with an expectation of confidentiality. It also includes the ability of U.S. Government officials to engage in non-public evaluations of the United States' relationships with specific countries, without fear that the information would become public and cause damage to those very relationships. Mutual trust between governments in this realm is vital to U.S. foreign relations. The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information.

30.     The Department of State withheld information in this case under FOIA Exemption 1, because the information is classified under Section 1.4(d) of E.O. 13,526. This information concerns sensitive aspects of U.S. foreign relations, in particular, frank assessments of other countries' security situations and confidential details about how other countries share information with the United States. Release of this classified information has the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security.

## B. FOIA Exemption 7 – Law Enforcement Information

31.     FOIA Exemption 7 protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts. 5 U.S.C. § 552(b)(7). The law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law.[2]  Records

---

[2] *Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 371 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement); *McErlean v. DOJ*, No. 97-7831, 1999 WL 791680, at *8 (S.D.N.Y. Sept. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

pertaining to routine agency activities can qualify for FOIA Exemption 7 protection when those activities involve a law enforcement purpose. Although the records must be created for some law enforcement purpose, there is no requirement that the matter culminate in actual administrative, regulatory, civil, or criminal enforcement proceedings. In this case, the harm that could reasonably be expected to result from disclosure concerns revealing sensitive law enforcement techniques and procedures.

32.     Before an agency can invoke any of the harms enumerated in FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. The Department of State asserts FOIA Exemption 7 in relation to its role in enforcing and administering U.S. immigration laws, and preventing and tracking fraud.

### FOIA Exemption 7(E) -- Investigative Techniques

33.     FOIA Exemption 7(E) protects investigation techniques in order to prevent "circumvention of the law." Courts have set "a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented,'" this exemption "'only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C.Cir.2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)), *see also New York Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 319 (S.D.N.Y. 2015) (quoting *Blackwell*).

34.     The Department protected records that reflect the non-public law enforcement databases and foreign government information that are accessible to Department personnel and that are used for official purposes by the Department and other authorized law enforcement personnel. This foreign government information and non-public law enforcement databases

*Brennan Center for Justice v. Dep't of State*
No. 1:17-cv-07520
Second Stein Declaration

serve as repositories for collected national security and criminal investigative information. Many are essentially "one-stop" shops that allow U.S. government officials to query information and develop investigative leads from a variety of source data using state-of-the-art analytical tools as part of the process to vet visa and refugee applications. Access to these databases and information are restricted; Department officials have access to them in accordance with datashare agreements and memoranda of understanding which restrict further disclosure of the records. Disclosure of the sources of information could enable criminals and terrorists to employ countermeasures to avoid detection, thus jeopardizing the U.S. Government's role in vetting visa applicants and refugees.

### IV.    DESCRIPTION OF INFORMATION WITHHELD

35.    **Document C06476513** is Attachment A to the Department of Homeland Security ("DHS") Report to the President on Section 2(b) of Executive Order ("E.O.") 13780, regarding assessment of certain countries' information-sharing capabilities. The document was originally and is currently classified SECRET/No Foreign Dissemination ("NOFORN"). The Department withheld this document in part under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States, including confidential sources. The withheld information consists of the names of countries that performed poorly in the information sharing categories identified in the paragraphs above the list of countries. This information was based on confidential exchanges with the host governments, as well as critical evaluations of host country capabilities by U.S. Government officials. Confidentiality of this information is vital to the conduct of successful foreign relations. In particular, U. S. Government officials must be able to provide policymakers with candid assessments of the various nations with which the United

States conducts foreign relations without fear that information will be made public. Disclosure of this information at this time could have the potential to inject friction into, or cause serious damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information.

36.     **Document C06576515** is Attachment B to the Department of Homeland Security ("DHS") Report to the President on Section 2(b) of Executive Order ("E.O.") 13780, regarding the methodology used to assess countries' information-sharing capabilities. The document was originally classified SECRET/NOFORN. The Department withheld this document in part under FOIA Exemption 7(E), 5 U.S.C. § 552 (b)(7)(E). Release of the withheld information would reveal information about specific law enforcement techniques used by U.S. officials to assess an alien's eligibility for a permit to enter the United States. The withheld sections describe various sources of information that are shared with other countries and that are used in assessing applications to enter the United States. Release of information about how the United States coordinates with other countries and assesses visa applications could assist individuals seeking to circumvent the procedures used for adjudicating refugee applications. Release of this information could reasonably be expected to reveal investigative techniques and vulnerabilities and risk circumvention of the law.

37.     **Document C06576519** is a memorandum from the Acting Secretary of Homeland Security to the President regarding E.O. 13780 Section 2(e). The document was originally and is currently classified SECRET/NOFORN under E.O. 13526. The Department withheld information in this document under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign

relations or foreign activities of the United States, including confidential sources. The withheld information consists of an assessment of the deficiencies in the information that certain countries are willing or able to share with the United States, including foreign policy considerations that may color the assessment of the countries' information-sharing capabilities. The Department withheld information in this document under section 1.4(b) that was provided by a foreign government in confidence. The Department also withheld information in this document under section 1.4(d) that concerns both confidential sources and sensitive aspects of U.S. foreign relations.

## V.  **SEGREGABILITY**

38.     The Department has carefully reviewed all of the documents addressed herein for reasonable segregation of non-exempt information and has implemented segregation when possible. Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law.

* * *

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this ___14th___ day of May 2018, Washington D.C.

_____

Eric F. Stein