## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

BRENNAN CENTER FOR JUSTICE AT )
NEW YORK UNIVERSITY SCHOOL OF LAW, )
)
        Plaintiff, )
)
v. )      Case No.:  17-cv-7520 (PGG)
)
UNITED STATES DEPARTMENT OF STATE, )
)
        Defendant. )

### DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.  I have held this position since August 1, 2002.  Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.  I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 243 employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and

1

information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, including the procedures followed by the FBI for consultations with other agencies regarding FOIA requests. Specifically, I am aware of the Department of Homeland Security's ("DHS") consultation to the FBI of five documents due to potential FBI equities in the records.

(4)     The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. This declaration provides justification for the FBI's withholding of certain information in the referred records pursuant to FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

## PLAINTIFF'S FOIA REQUEST AND LAWSUIT, AND THE REFERRAL OF THE RECORDS TO THE FBI FOR CONSULTATION

(5)     Plaintiff submitted a FOIA request dated July 20, 2017 to the Department of State ("DOS"), seeking a variety of records pertaining to the Trump Administration's visa-applicant vetting policies and procedures. On or about October 2, 2017, Plaintiff commenced a lawsuit against DOS, seeking the disclosure of a subset of the records requested by their FOIA request. Specifically, Plaintiff sought disclosure of: "[t]he report submitted by the Secretary of the Department of Homeland Security to President Trump on July 9, 2017, referred to in Section

2

1(c) of the Proclamation issued by President Trump on September 24, 2017"; "[t]he report submitted by the Secretary of Homeland Security to President Trump on September 15, 2017, referred to in Section 1(h) of the Proclamation"; and, "[i]f not included in the reports referred to in Sections 1(c) and 1(h) of the Proclamation, the final reports submitted by the Secretary of Homeland Security to President Trump" concerning certain countries identified in the Proclamation.

(6)     Following the commencement of the lawsuit, DOS located a total of five responsive records. Because these records originated with DHS, DOS referred the records to DHS for direct reply to Plaintiff. In turn, DHS referred the records to the FBI for consultation on or about January 10, 2018.

(7)     Following its review of the records, the FBI, by letter dated January 31, 2018, provided its response to DHS. The FBI requested DHS assert FOIA Exemption 7(E) to withhold certain information in the records, as release of that information would disclose techniques and procedures for law enforcement investigations or prosecutions, the disclosure of which could reasonably be expected to risk circumvention of the law.

(8)     By letter dated February 9, 2018, the government responded to Plaintiff concerning the parts of its FOIA request at issue in the lawsuit. The government asserted that the responsive records were exempt from disclosure in full pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), and in part pursuant to other FOIA exemptions, including Exemption 7(E).[1]

---

[1] The FBI did not assert FOIA Exemption 5 on these records. Accordingly, this declaration only addresses FOIA Exemption 7(E), which is the only exemption the FBI has asserted.

3

## THE FBI'S APPLICATION OF FOIA EXEMPTION 7(E) TO INFORMATION CONCERNING THE TERRORIST SCREENING DATABASE

(9)     FOIA Exemption 7 exempts from disclosure certain records or information compiled for law enforcement purposes when disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. *See* 5 U.S.C. § 552(b)(7). Here, disclosure of certain information contained in the responsive records—specifically, information compiled for law enforcement purposes and stored in the Terrorist Screening Database ("TSDB")—would disclose, and therefore could reasonably be expected to nullify the effectiveness of, sensitive law enforcement techniques or procedures. *See* 5 U.S.C. § 552(b)(7)(E).

(10)     In order to assert Exemption 7, an agency first must demonstrate that the records or information it seeks to withhold were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within their law enforcement duties. In this case, certain information contained in the records concerns how the federal law enforcement agencies work together to protect the nation from foreign terrorist entry into the United States – a national security threat.

(11)     The FBI's authority to investigate threats to the national security derives from the executive order concerning U.S. intelligence activities, from delegations of functions by the Attorney General, and from various statutory sources. *See, e.g.,* E.O. 12333, 46 Fed. Reg. 59941 (Dec. 4, 1981); 50 U.S.C. § 401, *et seq.* Activities within the definition of "threat to the national security" that are subject to investigation under the Attorney General's Guidelines for Domestic FBI Operations commonly involve violations or potential violations of federal criminal laws.

4

Hence, investigations of such threats may constitute an exercise both of the FBI's criminal investigative authority and of the FBI's authority to investigate threats to the national security.

(12)     As with criminal investigations generally, detecting and solving crimes, and eventually arresting and prosecuting the perpetrators, are likely to be among the objectives of investigations relating to threats to the national security. However, these investigations also often serve important purposes outside the ambit of normal criminal investigations and prosecutions, by providing the basis for, and informing decisions about, other measures needed to protect the national security. The records at issue here contain sensitive information concerning the TSDB. Accordingly, because the records pertain to the FBI's role in preventing foreign terrorist entry into the United States, these records were compiled for law enforcement purposes and meet the threshold for applying FOIA Exemption 7.

(13)     Specifically, certain information in the records is exempt from disclosure under Exemption 7(E), which protects records or information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

(14)     Exemption 7(E) exempts from disclosure specific information in the records concerning the TSDB. It is publicly known that the TSDB contains information about individuals known or appropriately suspected to be, or to have been, engaged in conduct constituting, in preparation for, in aid of, or related to terrorism. But the specific information collected, analyzed, and shared from the TSDB is not publicly known. Accordingly, FOIA Exemption 7(E) has properly been asserted to protect the types of specific information used to

5

screen for known and suspected terrorists in a variety of contexts, including during law enforcement encounters, the adjudication of applications for U.S. visas or other immigration and citizenship benefits, at U.S. borders and ports of entry, and for civil aviation security purposes.

(15)     The FBI shares the information maintained in the TSDB with federal, state, and local law enforcement entities. While it is publicly known that the FBI, with the support of the intelligence community and other government agencies, administers and maintains information for use with screenings and vetting, the specific information collected and shared from the TSDB is not publically known. The TSDB allows for a "one-stop" shop for law enforcement to query information and develop investigative leads from a variety of source data using a state-of-the-art analytical tool. The TSDB increases the FBI's overall efficiency and saves time by bringing together a comprehensive suite of vital information to be used to screen for known and suspected terrorists.

(16)     Disclosure of the specific information entered into the TSDB would give criminals insight into the resources that the FBI, the intelligence community, and other government and law enforcement agencies use and share to meet their law enforcement mission. Revealing the specific scope of information collected and shared would give criminals insight into the resources law enforcement uses to conduct investigations (i.e., their scope, capabilities, and vulnerabilities), thereby allowing criminals to employ countermeasures to avoid detection, and jeopardizing the FBI's investigative mission. This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained.

(17)     Disclosure of this type of information would enable criminals to educate themselves about the procedures employed by law enforcement for the collection and analysis of

6

information and therefore allow individuals to take countermeasures to circumvent the

effectiveness, efficiency, and the validity of the collected information.  Release would potentially

aid subjects to continue to violate the law and engage in intelligence, terrorist, and criminal

activities.  The FBI therefore has properly withheld this information pursuant to Exemption 7(E).

## CONCLUSION

(18)    As a result of the consultation with DHS, the FBI has determined its equities

within the responsive records are exempt from disclosure pursuant to FOIA Exemption 7(E), 5

U.S.C. §§ 552(b)(7)(E).  The disclosure of any FBI information from the specified records would

reveal the details of non-public investigative techniques and procedures, as well as non-public

details about publicly-known law enforcement techniques and procedures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this _____ day of May, 2018.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia