**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
BRENNAN CENTER FOR JUSTCE AT NEW                            :
YORK UNIVERSITY SCHOOL OF LAW,                             :
                                                            :
                    Plaintiff,                              :
                                                            :
        v.                                                  :        17 Civ. 7520 (PGG)
                                                            :
UNITED STATES DEPARTMENT OF                                 :
STATE,                                                      :
                                                            :
                    Defendant.                              :
------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR**
**SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**


                        GEOFFREY S. BERMAN
                        United States Attorney for the
                        Southern District of New York
                        86 Chambers Street
                        New York, New York 10007
                        Telephone:  (212) 637-2761
                        Facsimile:   (212) 637-2786


CHRISTOPHER CONNOLLY
Assistant United States Attorney
        – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT—THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE GRANTED, AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED......2

    A.    The State Department's Search Was Adequate ......................................................2

    B.    The Records Are Protected From Disclosure in Full by the Presidential
        Communications Privilege, and the Government Did Not Waive the Privilege .....4

    C.    The Records Are Properly Withheld in Part Pursuant to the Deliberative
        Process Privilege, and the Government Has Not Expressly Adopted Their
        Analysis and Conclusions .......................................................................................9

    D.    The Records Are Properly Withheld in Part Pursuant to Exemption 1 .................14

    E.    The Records Are Properly Withheld in Part Pursuant to Exemption 7(E) ...........18

CONCLUSION....................................................................................................................20

i

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*ACLU v. Dep't of Justice*,
    681 F.3d 61 (2d Cir. 2012).................................................................................... 14

*ACLU v. DoD*,
    628 F.3d 612 (D.C. Cir. 2011) ............................................................................. 14

*Adamowicz v. IRS*,
    552 F. Supp. 2d 355 (S.D.N.Y. 2008).................................................................... 3

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983)................................................................... 8, 16, 19

*Amnesty Int'l USA v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010).................................................................. 3, 4

*American Civil Liberties Union v. Dep't of Justice*,
    No. 15 Civ. 1954 (CM), 2016 WL 889739 (S.D.N.Y. Mar. 4, 2016)............................ 8, 9

*Assassination Archives and Research Center v. CIA*,
    334 F.3d 55 (D.C. Cir. 2003) ................................................................................ 7

*Center for Effective Government v. U.S. Dep't of State*,
    7 F. Supp. 3d 16 (D.D.C. 2013) ............................................................................ 8

*Dow Jones & Co. v. U.S. Dep't of Justice*,
    880 F. Supp. 145 (S.D.N.Y. 1995) ........................................................................ 7

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990).......................................................................... 8, 16

*General Electric Co. v. Johnson*,
    No. Civ.A.00-28855(JDB), 2006 WL 2616 (D.D.C. Sept. 12, 2006) ............................. 7

*Grand Central Partnership, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999)......................................................................... 3, 4, 9

*Halperin v. FBI*,
    181 F.3d 279 (2d Cir. 1999)............................................................................... 15

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
    891 F.2d 414 (2d Cir. 1989)............................................................................... 16

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ................................................................. 5, 6, 7

*Johnson v. Central Intelligence Agency,*
    --- F. Supp. 3d ----, No. 17 Civ. 1928 (CM),
    2018 WL 2085655 (S.D.N.Y. Apr. 26, 2018) ............................................. 16

*Judicial Watch, Inc. v. Dep't of Defense,*
    857 F. Supp. 2d 44 (D.D.C. 2012) .............................................................. 3

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) ................................................................. 15

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ..................................................... 14, 15, 17

*NAACP Legal Defense & Education Fund, Inc. v. HUD,*
    No. 07 Civ. 3378 (GEL), 2007 WL 4233008 (S.D.N.Y. Nov. 30, 2007) .......... 2

*Nat'l Council of La Raza v. U.S. Dep't of Justice,*
    411 F.3d 350 (2d Cir. 2005) ................................................................ 12, 13

*Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs*
    *Enforcement Agency,*
    811 F. Supp. 2d 713 (S.D.N.Y. 2011) ....................................................... 10

*Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs*
    *Enforcement Agency,*
    827 F. Supp. 2d 242 (S.D.N.Y. 2011) ....................................................... 10

*Nixon v. Administrator of General Services,*
    433 U.S. 425 (1977) ................................................................................ 4

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ............................................................................... 18

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ............................................................................... 14

*N.Y. Times Co. v. U.S. Dep't of Justice,*
    756 F.3d 100 (2d Cir. 2014) ...................................................................... 8

*N.Y. Times Co. v. Dep't of Defense,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ......................................................... 4

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012)................................................................. 2

*N.Y. Times Co. v. Dep't of Justice*,
   235 F. Supp. 3d 522 (S.D.N.Y. 2017).............................................................. 16

*N.Y. Times Co. v. Dep't of Justice*,
   508 F.3d 1108 (D.C. Cir. 2007)............................................................. 13, 15

*Renegotiation Board v. Grumman Aircraft Engineering Corp.*,
   421 U.S. 168 (1975)....................................................................... 9, 14

*Tigue v. U.S. Dep't of Justice*,
   312 F.3d 70 (2d Cir. 2002)................................................................... 14

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)...................................................................... 11

*United States v. Nixon*,
   418 U.S. 683 (1974)......................................................................... 6

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009).................................................................. 19

*Wilson v. CIA*,
   586 F.3d 171 (2d Cir. 2009)................................................................. 16

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007)........................................................... 16, 17

*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005).............................................................. 12, 13

**STATUTES**

5 U.S.C. § 552(a)(4)(A)........................................................................ 3

**OTHER**

Executive Order 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) .......................... 10, 11, 13

Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 24, 2017) ...................... 10

## PRELIMINARY STATEMENT

This case concerns communications from a Cabinet-level official directly to the President, which were drafted and submitted pursuant to an Executive Order as part of the Presidential decisionmaking process.   As explained in the government's opening brief ("Gov't Br.") and accompanying agency declarations, the State Department adequately searched for responsive records, and the government properly withheld those records in full under Exemption 5 because they fall squarely within the presidential communications privilege.

Plaintiff, in its cross-motion for summary judgment ("Pl. Br."), does not dispute that these records are presidential communications.   Nonetheless, it urges this Court to find that the government waived the presidential communications privilege by publicly disclosing the records. That argument fails for two reasons.  First, it fails to recognize the robust protections afforded by the privilege, which counsel strongly against a finding of waiver.  Second, contrary to the sweeping nature of its waiver allegations, Plaintiff does not identify a single instance where the records in question were publicly disclosed or even widely disseminated within the Executive Branch. Accordingly, Plaintiff's waiver argument fails, and the records are properly withheld in full.

Because the government's search for responsive records was adequate, and because those records are subject to the presidential communications privilege, the Court need not consider the government's remaining exemptions.   But those, too, are proper, and Plaintiff's challenges are unavailing.  First, Exemption 5 protects portions of the records that fall within the deliberative process privilege.  The government has not expressly adopted those portions of the records because it has never publicly relied on both the records' analysis and conclusions in stating its final policy. Second, Exemption 1 protects portions of the records containing classified national security information.  The government's burden in asserting that exemption is a light one that is easily met

here, and Plaintiff's suggestion that the exemption has been waived is belied by its failure to identify any instance in which the specific withheld material has been publicly disclosed.  Finally, the government properly applied Exemption 7(E) to portions of the records whose disclosure would reveal law enforcement techniques and procedures; that specific information has not been publicly disclosed, and there are no meaningful discrepancies between the agencies' respective assertions of the exemption that would call its application into question.

Because the government has established that its search was adequate, and that the responsive records are protected in full by Exemption 5 and in part by other exemptions, its motion for summary judgment should be granted, and Plaintiff's cross-motion should be denied.[1]

## ARGUMENT

### THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED, AND PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED

**A.    The State Department's Search Was Adequate**

Plaintiff's threshold claim that the State Department's search for responsive records was inadequate, Pl. Br. 9-10, is meritless.  As explained in the Stein Declaration, (i) Plaintiff requested specific records, (ii) the State Department tasked the agency component most likely to possess those records with conducting a search, (iii) the agency component located five responsive records,

---

[1]    The government did not submit a statement pursuant to Local Civil Rule 56.1 in support of its motion for summary judgment, nor is it submitting a response to Plaintiff's 56.1 statement.  *See* Pl. Br. 8 n.8.  That is because "[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required."  *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 3014 (S.D.N.Y. 2012) (quotation marks omitted); *see also NAACP Legal Defense & Education Fund, Inc. v. HUD*, No. 07 Civ. 3378 (GEL), 2007 WL 4233008, at *1 n.1 (S.D.N.Y. Nov. 30, 2007) (strict compliance with Rule 56.1 unnecessary because FOIA case "involve[s] purely legal inquiries, and resolution of those inquiries is not contingent on resolution of any factual disputes").  Of course, if the Court wishes the government to submit a Rule 56.1 statement in support of its motion, or a response to Plaintiff's 56.1 statement, it will do so promptly.

and (iv) the State Department confirmed with subject-matter experts that no further responsive records exist.  *See* Stein Decl. ¶¶ 12-19.  Not only was that search "reasonably calculated to discover" the responsive records, and therefore "adequate," *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999), but it *did* discover *all* of the responsive records.  Nothing more could possibly be required of the State Department, because nothing more can be done.

The Stein Declaration is "accorded a presumption of good faith" and "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *Id.*  But speculation is all Plaintiff offers.  Plaintiff's insistence that "reports on [certain] countries must exist," Pl. Br. 10, is both factually inaccurate and insufficient as a matter of law to undermine the adequacy of the State Department's search.[2]  Likewise, Plaintiff's claim that the State Department's search of "only one office" was "plainly inadequate," *id.*—without any explanation of where else Plaintiff thinks the agency should have searched, or why—does not rebut the Stein Declaration's explanation of why that search was undertaken, how it was conducted, and why it was sufficient, *see* Stein Decl. ¶¶ 15-17; *see also Judicial Watch v. Dep't of Defense*, 857 F. Supp. 2d 44, 53-55 (D.D.C. 2012) (where request seeks a "discrete set of extraordinarily high-profile records," it is reasonable for agency to query "relevant individuals" who are "well aware" of what records exist); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 499-500 (S.D.N.Y. 2010) ("a search that included having the person most knowledgeable regarding [the subject of the request] inquire

---

[2]    Plaintiff also states, without support, that "[i]f the reports exist but were not considered responsive because they were not submitted to the President, Defendant should say so."  Pl. Br. 10.  But it is the FOIA requester's obligation to "reasonably describe" the records sought.  5 U.S.C. § 552(a)(4)(A).  Here, Plaintiff sought "the final [country] reports *submitted by the Secretary of Homeland Security to President Trump*."  Complaint ¶¶ 2(c)-(d) (emphasis added).  The State Department was under no obligation to search for, or opine on the potential existence of, records that fall beyond the clear scope of Plaintiff's explicit request.  *See, e.g., Adamowicz v. IRS*, 552 F. Supp. 2d 355, 362 (S.D.N.Y. 2008) ("Plaintiffs asked for all documents pertaining to the *examination*, and that is precisely what they got.  If they wanted documents pertaining to the *appeal*, they could have requested them very easily." (emphasis in original)).

into the existence" of responsive records was adequate).  Indeed, while a search's adequacy is not measured by "whether it actually uncovered every document extant," *Grand Central*, 166 F.3d at 489, the fact that the State Department's search identified all of the responsive records is the clearest possible demonstration of its adequacy.  Plaintiff does not, and cannot, raise any colorable objection to the search.  The State Department is therefore entitled to summary judgment on that issue.

**B.     The Records Are Protected From Disclosure in Full by the Presidential Communications Privilege, and the Government Did Not Waive the Privilege**

As explained in the government's opening brief and the Holzer Declaration, the records at issue in this case are properly withheld in full pursuant to Exemption 5, because they fall squarely within the presidential communications privilege.  Gov't Br. 9-12; Holzer Decl. ¶¶ 21-25.  That privilege protects "communications in performance of a President's responsibilities . . . of his office . . . and made in the process of shaping policies and making decisions."  *Nixon v. Administrator of General Services*, 433 U.S. 425, 449 (1977) (quotation marks omitted).  Here, the Holzer Declaration establishes that the records are "confidential communications from a Cabinet-level official (the Secretary of Homeland Security) to the President, drafted and submitted pursuant to an Executive Order as part of the process of shaping policies and Presidential decision-making."  Holzer Decl. ¶ 24.  The government therefore easily meets its burden on summary judgment.  *See, e.g., Amnesty Int'l*, 728 F. Supp. 2d at 522 (granting summary judgment where declarations established that records "reflect or memorialize communications between senior presidential advisers and other United States government officials and are therefore properly withheld"); *New York Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007) (privilege applies where declaration establishes that records "originated with a presidential adviser and solicited advice regarding a presidential decision").

4

Plaintiff never disputes that the presidential communications privilege applies to these records.  Instead, it seems to allege that the government waived the privilege by "widely shar[ing]" the records "throughout the executive branch," and "describ[ing]" them "both to the public and foreign governments."  Pl. Br. 11.  That waiver argument fails because it is inconsistent with the law governing executive privileges generally and the presidential communications privilege in particular.  Moreover, Plaintiff fails to identify *any* instance in which *any* of the records were disseminated or disclosed to anyone, let alone as widely as Plaintiff would have the Court believe.

Plaintiff's waiver claim is at odds with the robust protections offered by the presidential communications privilege.  "Since executive privilege exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred."  *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (quotation marks omitted).  That is particularly true with respect to the presidential communications privilege, which, unlike other executive privileges, "is rooted in constitutional separation of powers principles and the President's unique constitutional role."  *Id.* at 745.  Indeed, records over which the privilege is asserted are "presumptively privileged."  *Id.* at 744.  Furthermore, "unlike the deliberative process privilege, the presidential communications privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones . . . . [N]one of the cases suggest that it encompasses only the deliberative or advice portions of documents."  *Id.* at 746.  Put simply, "the presidential privilege affords greater protection against disclosure" than other executive privileges, and therefore "is more difficult to surmount."  *Id.* at 746; *see also id.* at 745 ("judicial negation of the presidential communications privilege is subject to greater scrutiny than denial of the deliberative process privilege").

These fundamental principles call into question Plaintiff's assertion that mere dissemination of records within the Executive Branch is sufficient to vitiate the privilege. At the very least, they establish that the dissemination of the records as described in the Holzer Declaration—"to a select and limited group of senior foreign policy and national security advisors, cabinet officials, and agency heads," Holzer Decl. ¶ 24—is wholly consistent with the assertion of the privilege. Indeed, dissemination of this sort without fear of waiver makes sense given the privilege's "concern that the President be given sufficient room to operate effectively," *In re Sealed Case*, 121 F.3d at 745, and its general objective of ensuring that the "President and those who assist him [are] free to explore alternatives in the process of shaping policies and making decisions," *United States v. Nixon*, 418 U.S. 683, 708 (1974).

Not only is Plaintiff's waiver argument inconsistent with the scope of the privilege, but it is also factually misleading. Plaintiff first asserts that "*[t]he documents* were distributed within the executive branch and to foreign governments." Pl. Br. 12 (emphasis added). But Plaintiff can offer no proof for this contention. Rather, all that Plaintiff points to is a single media report alleging that a cable purportedly summarizing just one of the five responsive records was distributed within the State Department to help guide consular officials in future discussions with foreign countries. *See id.* at 12-13; Declaration of Ishita Kala, dated July 9, 2018 ("Kala Decl."), Ex. 24. Those anticipated discussions, moreover, were in furtherance of the objectives of Executive Order 13780, *i.e.*, to determine what information the United States requires from foreign countries in order to adjudicate admission applications, and whether and to what extent countries are willing and able to provide such information. *See* Pl. Br. 13. Plaintiff's next claim, that "*[t]he documents* were broadly disclosed to the public," *id.* (emphasis added), is similarly misleading. Plaintiff again has not provided any evidence that any of these closely-held records have been

publicly released.   Instead, Plaintiff points to fact sheets, press briefings, and other material released in the wake of the President's issuance of the Proclamation.  *See id.* at 13-15; Kala Decl., Exs. 17-21.

In short, Plaintiff does not identify a single instance where any of the records themselves were either disseminated within the Executive Branch or publicly disclosed.  That alone defeats Plaintiff's waiver claim, since it is well-established that "release of a document only waives [executive] privileges for the document or information specifically released, and not for related materials."  *In re Sealed Case*, 121 F.3d at 741; *see also Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 880 F. Supp. 145, 151 (S.D.N.Y. 1995) ("Specificity is the touchstone in the waiver inquiry, and thus, neither general discussions of topic nor partial disclosures of information constitute waiver of an otherwise valid FOIA exemption."); *cf. General Electric Co. v. Johnson*, No. Civ.A.00-2855(JDB), 2006 WL 2616187, at *17 (D.D.C. Sept. 12, 2006) ("There is no authority for applying the waiver rule to the deliberative process privilege . . . . [D]isclosure of a deliberative document waives the privilege only as to that document, not as to others dealing with the same subject matter.").  Here, by Plaintiff's own admission, the cable merely "outline[d]" one of the records for the benefit of Executive Branch personnel and gave no indication of what information, if any, was discussed with foreign governments, Pl. Br. 12-13, while the remaining documents and public statements that Plaintiff identifies concern the Proclamation, not the withheld records, *id.* at 13-15.   Indeed, given the heightened protections afforded by the presidential communications privilege, it is reasonable to hold a plaintiff asserting waiver of that privilege to the same burden that applies to a waiver of Exemption 1, *i.e.*, "that the disclosure is 'as specific as' and 'match[es]' the sought material."  *Assassination Archives and Research Center*

v. CIA, 334 F.3d 55, 60 (D.C. Cir. 2003) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); and *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).

Given this legal and factual backdrop, the sole district court decision on which Plaintiff bases its waiver argument is readily distinguishable. *See* Pl. Br. 10-12. In *Center for Effective Government v. U.S. Dep't of State*, 7 F. Supp. 3d 16 (D.D.C. 2013), the court held that the government could not assert the presidential communications privilege over a post-decisional "Presidential Policy Directive." Although Plaintiff focuses on the district court's findings concerning the scope of distribution of the directive within the Executive Branch, *see* Pl. Br. 11, the court's holding actually turned on broader considerations: specifically, the fact that the directive was "a final, non-classified, presidential directive that has been distributed widely within the Executive Branch and serves as guidance for several policy-making bodies, including twenty-two Executive Branch agencies, as well as the [National Security Staff] and National Security Council ("NSC") Deputies and Principals." *Center for Effective Government*, 7 F. Supp. 3d at 23-24. The court therefore suggested that permitting the withholding of a "*final, non-classified* communication [that] is widely distributed within the Executive Branch and implemented by lower-level staff members in a manner similar to any other agency statement of policy" might amount to condoning "secret law." *Id.* at 29-30 (emphasis in original). Thus, even setting aside the question of whether the presidential communications privilege can be waived by distribution of a record within the Executive Branch—which the government disputes—*Center for Effective Government* addressed a factual scenario that simply is not present here. *See id.* at 23 (observing that "no case has addressed this privilege in terms of a presidential directive").[3] In fact, at bottom,

---

[3]     Plaintiff also cites to an unpublished memorandum order in *American Civil Liberties Union v. Dep't of Justice*, No. 15 Civ. 1954 (CM), 2016 WL 8899739 (S.D.N.Y. Mar. 4, 2016). *See* Pl. Br. 11. That interim decision—which ordered the government to provide certain records for *in camera* review without ruling on whether they were protected by the presidential

*Center for Effective Government* was not a waiver case—it addressed whether the privilege even applied to presidential directives. Here, by contrast, the records at issue are quintessential presidential communications—they are the recommendations of a high-level advisor to the President.

Plaintiff does not dispute that the records are presidential communications. Its waiver argument fails to account for the scope of protection afforded by the presidential communications privilege; mischaracterizes the dissemination of the records; and fails to show that the records themselves, or the specific information they contain, were disclosed widely within the Executive Branch, to foreign governments, or to the public. The sole district court case on which it relies is factually inapposite. Accordingly, the records are properly withheld in full under Exemption 5.

## C.   The Records Are Properly Withheld in Part Pursuant to the Deliberative Process Privilege, and the Government Has Not Expressly Adopted Their Analysis and Conclusions

Portions of the records are also properly withheld under Exemption 5 because they are protected by the deliberative process privilege. Gov't Br. 15-18; Holzer Decl. ¶¶ 32-36. The withheld portions of the records are predecisional because they "precede[ ], in temporal sequence, the 'decision' to which [they] relate[ ]," and were "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975); *see* Holzer Decl. ¶ 33 (records "were prepared to assist the ultimate decision-maker—the President—in reaching a final determination concerning the United States' visa vetting procedures and appropriate entry restrictions on certain foreign nationals"). Further, the portions of the records are deliberative because they were "related to the process by which policies are formulated." *Grand Central*, 166 F.3d at 482; *see* Holzer Decl. ¶ 33 (records

communications privilege—merely recited *Center for Effective Government*'s reasoning. *See* 2016 WL 8899739, at *3-*6.

"were created to advise and assist the President in carrying out national security policies, and they were antecedent to any final decision being made").   Indeed, the predecisional and deliberative nature of these records is obvious: they were created pursuant to an Executive Order for the express purpose of making recommendations to the President, *see* E.O. 13780, 82 Fed. Reg. 13209, 13212-13 (Mar. 6, 2017); Gov't Br. 2-3, and were among several sources that the President consulted in making a final decision, *see* Proclamation No. 9645, 82 Fed. Reg. 45161, 45162-63 (Sept. 24, 2017); Gov't Br. 4-5.

Plaintiff's claim that the records are not predecisional, Pl. Br. 16-17, is simply wrong. Relying on the existence of prior travel bans, it asserts that the records "implemented a decision already made." *Id.* at 16.  But that argument ignores the fact—which Plaintiff readily concedes— that the Proclamation differed from earlier entry restrictions.  *See* Pl. Br. 3-6 (describing three iterations of the travel ban); Complaint ¶¶ 7-24 (same).  Moreover, the district court cases Plaintiff cites in support of its position, *see* Pl. Br. 16-17, are inapposite.  Those cases focused on whether "messaging" documents, *i.e.*, documents discussing how to communicate an existing policy to the public, were protected by the deliberative process privilege.  *See Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011).  The records here do not involve messaging; rather, they assess information and make policy recommendations.  Holzer Decl. ¶¶ 32-36.  Put another way, the records seek to "persuade parties debating a policy shift," *Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency*, 827 F. Supp. 2d 242, 252 (S.D.N.Y. 2011)—and there can be no question that a policy shift occurred subsequent to the creation of these records because, as Plaintiff acknowledges, the Proclamation announced travel restrictions and visa vetting procedures that differed from earlier iterations, *see* Pl. Br. 3-6; Complaint ¶¶ 7-24; *see also Trump*

*v. Hawaii*, 138 S. Ct. 2392, 2403-05 (2018) (describing different sets of entry restrictions prior to issuance of the Proclamation).

Plaintiff's claim that the documents are not deliberative, Pl. Br. 17-18, fares no better.  The records' proposals concerning which countries fail to meet applicable requirements are plainly deliberative because the government did not make any final determinations on that issue prior to the issuance of the Proclamation.  *See* Holzer Decl. ¶¶ 14-15.  The purported copy of a cable—which, again, merely outlined one of the five records, and allegedly was disseminated only within the State Department—is too slender a reed to bear the weight of Plaintiff's argument.  *See* Pl. Br. 17-18.  The summary contained in the purported cable allegedly was disseminated within the Executive Branch not for the purposes of implementing a final policy, but rather in order to facilitate discussions with foreign governments as part of the ongoing policymaking process—in other words, to allow Executive Branch agencies to fulfill Executive Order 13780's mandate to "submit to the President a list of countries *recommended* for inclusion in a Presidential proclamation."  82 Fed. Reg. at 13213 (emphasis added).  Similarly, as explained above, Plaintiff's assertion that the government "shared portions of its stated policy widely, publicly, and globally" by allegedly disseminating an outline of one of the responsive records within the State Department, Pl. Br. 18, is untrue.  And Plaintiff's claim that "President Trump adopted and publicized that policy in the Proclamation," *id.*, merely underscores that these records—which preceded the issuance of the Proclamation and were created specifically to advise the President in making his final policy decision—are deliberative.  The final policy document is the Proclamation, not the recommendation memoranda that preceded it.

Lastly, the government did not expressly adopt the deliberative portions of the records.  *See* Pl. Br. 19-21.  Express adoption requires that an agency, in communicating a final decision, adopt

both the analysis and conclusions contained in an otherwise deliberative document. *See Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 250, 358 (2d Cir. 2005); *Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005). Here, at best, Plaintiff identifies public statements suggesting that the President concurred with at least some of the documents' conclusions. *See* Pl. Br. 20. But Plaintiff does not, and cannot, cite to any public statements demonstrating that the government adopted any portions of the analysis contained in the records. That alone is "fatal" to its adoption argument. *Wood*, 432 F.3d at 84.

The public statements of the Solicitor General on which Plaintiff relies merely indicate, without further explanation, that the President adopted "recommendations" made by the Secretary of Homeland Security. *See* Pl. Br. 20 (citing Kala Decl., Exs. 16, 29). Those statements do not even identify which recommendations were adopted, or the specific documents in which those recommendations were contained. And critically, the statements do not discuss the analysis supporting those recommendations or assert that the President's final policy decisions were premised on that analysis.

That is a far cry from the facts presented by *La Raza*. There, during a press conference held to announce a new policy, the Attorney General identified, and described the contents of, a specific document—an Office of Legal Counsel ("OLC") memorandum that provided the legal basis for the government's new position. *La Raza*, 411 F.3d at 353. Thereafter, in a letter responding to an advocacy organization's query about the policy change, the Attorney General wrote, "*Let me first state the policy of the Department on this issue*," and proceeded to identify the specific OLC memorandum, summarize the memorandum's contents, and expressly state that the memorandum formed the basis for the government's new policy. *Id.* at 353-54 (emphasis in original). Finally, during a presentation to state and local police departments that would be

affected by the new policy, counsel to the Attorney General described the reasoning and conclusions in the OLC memorandum in even greater detail, tethering the memorandum to the Attorney General's announcement of the policy change. *Id.* at 354-55. The Second Circuit held that, in light of the "repeated references made by the Attorney General and his high-ranking advisors" to the reasoning contained in the OLC memorandum, which "demonstrate[d] that [DOJ] regarded the Memorandum as the exclusive statement of, and justification for, its new policy," DOJ had expressly adopted the memorandum. *Id.* at 357.

The public statements Plaintiff identifies here come nowhere close to meeting the standard for adoption articulated in *La Raza*. At the threshold, they do not identify a specific document whose analysis and conclusions the government purportedly adopted, referring instead to "the recommendations" of the Secretary of Homeland Security. Pl. Br. 20; Kala Decl., Exs. 16, 29. Further, they are devoid of any articulation of, let alone agreement with, the analysis contained in any specific document. Indeed, the Proclamation itself explains that DHS's recommendations were only one aspect of the decisionmaking process, and that in evaluating those recommendations, the President also "consulted" with high-level officials and "considered" numerous relevant factors and policy goals. 82 Fed. Reg. at 45164. There is simply no express statement establishing that the President adopted both the analysis and conclusions contained in the withheld records. Thus, under well-established case law, the statements Plaintiff identifies cannot form the basis for a finding of adoption. *See La Raza*, 411 F.3d at 358 ("Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference."); *Wood*, 432 F.3d at 84 ("There is no evidence in the record from which it could be inferred that DOJ adopted the reasoning of the Memo, and, as we explained in *National Council*

*of La Raza*, this failure is fatal."); *Tigue v. U.S. Dep't of Justice*, 312 F.3d 370, 381 (2d Cir. 2002) ("minor references" to memorandum "cannot be said to be an express adoption or incorporation"); *Grumman*, 421 U.S. at 186 ("[A]bsent indication that its reasoning has been adopted, there is little public interest in disclosure of a report."); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975) ("[T]he public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground.").

Portions of the records are predecisional and deliberative, and the government did not expressly adopt their analysis and conclusions in articulating its final policy. Accordingly, if the Court were to reach this issue, it should find that the records are properly withheld in part pursuant to Exemption 5 and the deliberative process privilege.

## D.   The Records Are Properly Withheld in Part Pursuant to Exemption 1

Exemption 1 likewise shields portions of the records from disclosure. *See* Gov't Br. 12-13. The government's burden for establishing the exemption's applicability "is a light one." *ACLU v. DoD*, 628 F.3d 612, 624 (D.C. Cir. 2011). "[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified," *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007), and courts have "consistently deferred to executive affidavits predicting harm to the national security," *ACLU v. Dep't of Justice*, 681 F.3d 61, 70 (2d Cir. 2012). The Stein and Holzer Declarations, which explain in detail why the withheld information meets each of the classification requirements set forth in Executive Order 13526, and which logically and plausibly explain why the unauthorized disclosure of that information could be expected to harm the national security of the United States, easily clear this low threshold. *See* Stein Decl. ¶¶ 20-

30; Holzer Decl. ¶¶ 27-31.  Nothing further is required to establish that these records contain information that is properly classified and thus exempt from disclosure.

Plaintiff's opposition to the government's application of Exemption 1 ignores the standards that apply to the exemption.  Plaintiff asserts that the government must provide "'itemized descriptions'" of material withheld under Exemption 1, Pl. Br. 21 (quoting *Halperin v. FBI*, 181 F.3d 279, 294 (2d Cir. 1999)), but while courts might find such descriptions necessary in some cases, that is not the law across the board.[4]  Rather, consistent with the forgiving standard described above, if the government's affidavits contain "reasonable specificity" to show that "information logically falls within [the] claimed exemption," then the "court should not conduct a more detailed inquiry to test the agency's judgment."  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).  The Stein and Holzer Declarations explain with reasonable specificity why certain foreign government information and information about the United States' foreign activities fall within the exemption.  *See* Stein Decl. ¶¶ 20-30; Holzer Decl. ¶¶ 27-31.  Indeed, given the nature of the records at issue—recommendation memoranda evaluating the foreign policy and national security consequences of foreign countries' respective abilities to provide information about individuals seeking admission to the United States—it is more than "plausible" that the information described in the declarations is properly classified.  *Morley*, 508 F.3d at 1124.  The Court does not require

---

[4]      The Second Circuit's holding in *Halperin*, for example, turned on its determination that the agency's explanations of its Exemption 1 redactions—which were applied to records that were otherwise released in part—were insufficiently specific.  *See* 181 F.3d at 292-93.  The court held that the agency declaration, which used a coding system to cross-reference redacted portions of the records with explanations of the exemption, improperly "shift[ed] to the courts the burden to wade through pages of material in search of contextual support for the government's own redactions."  *Id.* at 294.  Accordingly, it held that the government needed to provide additional context for the redactions in its declaration in order to sustain its burden on summary judgment. *See id.*  But the unique facts of *Halperin*—involving the application of Exemption 1 within a large volume of partially released records, and a declaration that relied on a coding and cross-referencing system to justify its claimed exemptions—are not present here.

an "itemized description" to recognize the applicability of the exemption, particularly given the deference owed to the government's assessment of potential harm to the national security.

Plaintiff's attempt to fault the government for failing to "acknowledge[ ] the extensive official public disclosures that have been made about the disputed documents," Pl. Br. 21, also misstates the law.  That burden belongs to Plaintiff, not the government.  *See, e.g., Afshar*, 702 F.2d at 1130 (plaintiff bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld").  And the burden is not a light one: rather, the plaintiff must show that the information requested is (i) "as specific as the information previously released"; (ii) "match[es] the information previously disclosed"; and (iii) was "already . . . made public through an official and documented disclosure."  *Fitzgibbon*, 911 F.2d at 765; *accord Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009).[5]  That is because FOIA "bars the courts from prying loose from the government even the smallest bit of information that is properly classified."  *Afshar*, 702 F.2d at 1130.  Accordingly, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure.  The insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (emphasis in original; quotation marks omitted); *see also Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (government may not

---

[5]        Although, in *dicta*, a Second Circuit panel recently questioned whether "a rigid application" of the three-part test articulated by *Wilson* was required, it nonetheless acknowledged that "*Wilson* remains the law of this Circuit."  *New York Times Co. v. Dep't of Justice*, 756 F.3d 100, 120 n.19 (2d Cir. 2014).  District courts in this Circuit have continued to apply *Wilson*'s three-part test.  *See, e.g., Johnson v. Central Intelligence Agency*, --- F. Supp. 3d ----, No. 17 Civ. 1928 (CM), 2018 WL 2085655, at *4 (S.D.N.Y. Apr. 26, 2018); *New York Times Co. v. Dep't of Justice*, 235 F. Supp. 3d 522, 537 (S.D.N.Y. 2017).

withhold information Exemption 1 when it "has officially disclosed the *specific* information being sought" (emphasis in original)).

Plaintiff cannot "point to specific information that was previously released and is now withheld." *Morley*, 508 F.3d at 1124.  It observes that the Proclamation found eight countries' information-sharing to be inadequate, Pl. Br. 22, but that finding does not amount to a specific disclosure of the classified information that otherwise appears in DHS's identification of countries with deficient information-sharing capabilities and its assessment of those deficiencies, *see id.* at 21.  It is logical, and indeed predictable, that underlying assessments of this nature will contain classified information that is omitted from a subsequent policy announcement.

Plaintiff's reliance on the purported State Department cable to claim that the methods by which certain information was obtained and assessed have been officially disclosed, *id.* at 22, is even further off the mark.  The purported cable was not released by the government, and therefore is not an official disclosure.  *See* Kala Decl., Ex. 24.  Further, according to the media report on which Plaintiff relies, the purported cable was not marked classified and was merely a summary of one of the records at issue, *see id.*—further evidence that the information it includes would not match, and would not be as specific as, the classified information properly withheld here.  In fact, the cable purports to summarize the Report, over which the government has not asserted Exemption 1.  *See* Stein Decl., Ex. 2.  The cable therefore does not provide Plaintiff with the "exactitude" necessary to overcome the exemption.  *Wolf*, 473 F.3d at 378.  Finally, Plaintiff's claim that "[t]he 'method[s]' for assessment were *purportedly* based on the baseline set out" in one of the withheld records, Pl. Br. 22 (emphasis added), and its theories about why the government asserted Exemption 1 over some records but not others, *see id.* at 22-23, are sheer speculation that cannot serve to satisfy Plaintiff's high burden for demonstrating waiver.

17

Because the government's declarations plausibly assert that certain information in the records is classified and withheld under Exemption 1, and because Plaintiff fails to meet its high burden to demonstrate that specific information in the public domain duplicates the withheld information, there is no basis for Plaintiff's suggestion that the government must submit supplemental declarations.  Pl. Br. 23.  Likewise, its invitation for the Court to conduct *in camera* review should also be declined.  *Id.*; *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (*in camera* review should only be invoked "when the issue before the District Court could not be otherwise resolved").  Should the Court reach the issue of the government's partial application of Exemption 1, the government's declarations satisfy its light burden for withholding the classified national security information contained in the records.

**E.    The Records Are Properly Withheld in Part Pursuant to Exemption 7(E)**

Lastly, the government properly withheld portions of the records pursuant to Exemption 7(E), because release of that information would disclose law enforcement investigative techniques and procedures.  *See* Gov't Br. 18-19.  As explained in the Stein, Holzer, and Hardy Declarations, the withheld material consists of information concerning non-public databases accessed by law enforcement personnel for screening and vetting potential entrants to the United States, *see* Stein Decl. ¶¶ 34, 36; Hardy Decl. ¶¶ 14-15, information obtained from foreign governments used for the same screening and vetting purposes, *see* Stein Decl. ¶¶ 34, 36, DHS's process for obtaining, weighing, and evaluating information used in making admissions determinations, *see* Holzer Decl. ¶ 38, and information DHS compiled concerning the security of foreign countries' identity and travel documentation, *see id.*

Plaintiff's objections to these partial withholdings are unavailing, and its request for supplemental declarations should be denied.  Yet again, Plaintiff accuses the government of

"fail[ing] to acknowledge the effect that the extensive public disclosures have on its Exemption 7(E) justifications," Pl. Br. 23, but those purported disclosures are nowhere near as extensive as Plaintiff claims, and in any event Plaintiff fails to carry its burden of showing that any public information specifically matches the information withheld, *see Afshar*, 702 F.2d at 1130. The only public material Plaintiff points to are the fact sheets and public statements released in the wake of the Proclamation's issuance, Pl. Br. 24, but nothing in its conclusory assertion comes close to demonstrating that these summaries of "methodology and criteria" disclose the information that has been withheld under Exemption 7(E).

Plaintiff points out that "a close examination" of the government's submissions "reveals that at least some portions [of the records] do not fall under Exemption 7(E)." Pl. Br. 24. The government agrees—which is why it has only asserted that exemption over these records in part. Plaintiff does not, and cannot, suggest that the type of information the government's declarations describe is not properly withheld under this exemption. Nor does the fact that some agencies asserted Exemption 7(E) over certain records while other agencies did not assert the exemption over other records, Pl. Br. 25, undermine the government's withholdings. At most, it reflects that each agency carefully reviewed the responsive records and only asserted an exemption as to those documents that contained information that fell within Exemption 7(E). *See* Stein Decl. ¶ 10; Holzer Decl. ¶ 10; Hardy Decl. ¶ 7. Plaintiff's suggestion that this calls into question any of the exemptions is baseless, and does not defeat the "logical [and] plausible" justifications for the exemptions set forth in the declarations. *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, and those set forth in the government's opening brief and agency declarations, Plaintiff's cross-motion for summary judgment should be denied and the government's motion for summary judgment should be granted.

Date:   New York, New York
        July 23, 2018

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

                    By:    /s/ *Christopher Connolly*
                           CHRISTOPHER CONNOLLY
                           Assistant United States Attorney
                           86 Chambers Street, 3rd Floor
                           New York, New York 10007
                           Tel.: (212) 637-2671
                           Fax: (212) 637-2786
                           christopher.connolly@usdoj.gov