UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENNAN CENTER FOR JUSTICE AT NEW YORK UNIVERSITY SCHOOL OF LAW,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>      Defendant. | Case No. 17 Civ. 7520 (PGG) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Neil K. Roman
Ishita Kala
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
nroman@cov.com
ikala@cov.com

Mark H. Lynch[i]
Kevin Barnett[i]
Jaclyn E. Martínez Resly[i]
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-6000
mlynch@cov.com
kbarnett@cov.com
jmartinezresly@cov.com

Johnathan Smith
Sirine Shebaya
MUSLIM ADVOCATES
P.O. Box 66408
Washington, DC 20035
(202) 897-1897
johnathan@muslimadvocates.org
sirine@muslimadvocates.org

Richard B. Katskee[i]
Eric Rothschild[i]
Andrew L. Nellis[i]
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
1310 L St. NW, Suite 200
Washington, DC 20005
(202) 466-3234
katskee@au.org
rothschild@au.org
nellis@au.org

[i] Admitted *pro hac vice*

*Attorneys for Plaintiff Brennan Center for Justice at New York University School of Law*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ i

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 2

I.  The Government Overstates the Breadth of the Presidential-Communications Privilege and Mischaracterizes Plaintiff's Argument. ........................................................ 2

II. The Government Does Not Credibly Argue That the President Did Not Adopt the Report and Memorandum in His Proclamation. ................................................................ 6

III. The Government Fails to Rebut Plaintiff's Showing That It Must Adequately Describe Exemption 1 and 7(E) Information. ..................................................................... 8

IV. The Government Has Not Demonstrated That Its Search Was Adequate. ......................... 9

CONCLUSION .................................................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ACLU v. DOJ*,
  No. 15-civ-1954 (CM), 2016 WL 889739 (S.D.N.Y. Mar. 4, 2016) ...................................2, 3

*ACLU v. U.S. Dep't of Justice*,
  681 F.3d 61 (2d. Cir. 2012) ..............................................................................................8

*Am. Civil Liberties Union v. F.B.I.*,
  429 F. Supp. 2d 179 (D.D.C. 2006) ..................................................................................9

*Associated Press v. U.S. Dep't of Def.*,
  462 F. Supp. 2d 573 (S.D.N.Y. 2006) ...............................................................................8

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ..........................................................................................6

*Ctr. for Effective Gov't v. U.S. Dep't of State*,
  7 F. Supp. 3d 16 (D.D.C. 2013) ...........................................................................2, 3, 4, 5

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) .............................................................................................8

*Katzman v. CIA*,
  903 F. Supp. 434 (E.D.N.Y. 1995) ..................................................................................10

*Lamont v. Dep't of Justice*,
  475 F. Supp. 761 (S.D.N.Y. 1979) ....................................................................................8

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005) ..........................................................................................6, 7

*New York Times Co. v. U.S. Dep't of Justice*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) ...............................................................................9

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ......................................................................................2, 5

*Spirko v. U.S. Postal Serv.*,
  147 F.3d 992 (D.C. Cir. 1998) ..........................................................................................9

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ......................................................................................................7

*Trump v. Hawaii*,
    138 S. Ct. 923 (2018)................................................................................................................6

*Tigue v. U.S. Department of Justice*,
    312 F.3d 370, 381 (2d Cir. 2001)..............................................................................................7

*Wood v. FBI*
    422 F.3d 78, 84 (2d Cir. 2005)...................................................................................................7

## **INTRODUCTION**

Although the government portrays this case as one where it has asserted the presidential-communications privilege only for documents sent from a Cabinet Secretary directly to the President and closely-held by the President's advisers, that narrative is not supported by the record. This case instead involves documents that were widely disseminated to government employees across departments and agencies, publicly discussed by the President in an official Proclamation, and described in government fact sheets.

The government's position that the July 2017 report ("Report") and the September 2017 report ("Memorandum") are protected by the presidential-communications privilege regardless of who else received the documents is contrary to case law. Moreover, because FOIA places the burden of proof on the government to establish the applicability of an exemption, where the government asserts the presidential-communications privilege, the government must establish that the documents are closely-held within the circle of presidential advisers. But here, its declarations admit that the documents have been widely distributed throughout the executive branch, and the uncontradicted evidence submitted by Plaintiff shows that the information in those documents was widely publicized by the government. That is sufficient to defeat a claim of the presidential-communications privilege.[1]

With respect to its claim of deliberative-process privilege, the government ignores the unequivocal statement of the Solicitor General of the United States to the Supreme Court that President Trump adopted the Secretary of Homeland Security's recommendations in the Report and Memorandum. That admission fatally undermines the deliberative-process privilege claim.

---

[1] Contrary to the strawman at which the government aims much of its argument, Plaintiff does not contend that the requested documents have been publicly disclosed.

With respect to its claims of Exemptions 1 and 7(E), the government attempts to shield its failure to provide any detail about the specific portions of the documents that are being withheld by insisting that Plaintiff bears the burden of showing that exact portions of the documents have been publicly disclosed.  But the government has failed to meet its burden under FOIA, and further justification for those claims is required.

Finally, the government fails to provide the information necessary to meet its burden of showing that it conducted an adequate search for one category of records—the "country reports." It is clear from the government's declarations—not a matter of plaintiffs' speculation—that the search for those documents was inadequate.  Again, the government has failed to carry its burden under FOIA.

## ARGUMENT

I. **The Government Overstates the Breadth of the Presidential-Communications Privilege and Mischaracterizes Plaintiff's Argument.**

The government's argument that the Report and Memorandum are quintessential examples of presidential-communications is contrary to both law and fact.  *See* Gov't Opp. 4-7. Instead, courts have "construed [the privilege] as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected," *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997), and have consistently refused to apply the privilege when communications have been widely distributed throughout the government or described in public statements.  *Ctr. for Effective Gov't v.  U.S. Dep't of State*, 7 F. Supp. 3d 16, 24–25 (D.D.C. 2013); *ACLU v. DOJ*, No. 15-civ-1954 (CM), 2016 WL 889739, at *5 (S.D.N.Y. Mar. 4, 2016) ("If a document . . . is transmitted to multiple agencies and to staffers who serve in non-advisory roles to the President, the document loses any claim to the presidential-communications privilege.").

2

The government has failed to meet its burden to show that the Report and Memorandum were closely-held communications—a necessary element of the presidential-communications privilege. In fact, the government's own declarations show the opposite. The government reveals that, during the drafting process, personnel spanning the Department of Homeland Security ("DHS") Office of Policy, the DHS Office of Intelligence and Analysis, the DHS Office of General Counsel, and DHS's interagency partners had access to the Report and Memorandum. *See* Declaration of James V.M.L. Holzer ("Holzer Decl.") ¶ 16. The government also acknowledges DHS sent the Report and the Memorandum to the State Department, the Office of the Director of National Intelligence, and undisclosed persons at "*other critical* Executive Branch agencies." *See id.* ¶ 17 (emphasis added).[2] In addition, DHS further distributed the Report and the Memorandum to an unspecified number of "highly-ranked" individuals at U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services, who, rather than advising the President, are "charged with enforcing the immigration laws and regulating ports of entry." *Id.* These admissions demonstrate that the Report and Memorandum were distributed widely throughout the executive branch. *See Ctr. for Effective Gov't*, 7 F. Supp. 3d at 24; *ACLU*, 2016 WL 889739, at *5.

As in *Center for Effective Government*, the Report is a completely unclassified document. *See* Declaration of Ishita Kala ("Kala Decl.") Ex. 2. Thus, the Trump Administration freely shared the purportedly closely-held information contained in the Report with "all consular outposts" and 191 foreign governments. The administration sent an unclassified cable to "all consular outposts" revealing the specific standards for identity-related information sharing and

---

[2] As evidenced by this concession, the government's statement that "Plaintiff does not identify a single instance where any of the records themselves were . . . disseminated within the Executive Branch," Gov't Opp. at 1, is undermined by its own declarations.

3

terrorism and public safety threat information sharing identified in the Report. Kala Decl. Ex. 24 ("This cable outlines the results of the report submitted to the President on July 10"). The government has failed to demonstrate how a report shared with an unidentified number of executive branch agencies and summarized for hundreds, if not thousands, of consular employees and foreign officials remain a closely-held document.

Even though these admissions alone defeat the government's claimed presidential-communications privilege, the Trump Administration went further and publicly detailed the contents of the Report and Memorandum. Instead of disputing that the administration disclosed information contained in the Report and Memorandum, the government mischaracterizes Plaintiff's arguments and seizes on an editing oversight in a section heading to rebut a strawman.[3] Plaintiffs do not argue that the requested documents have been publicly disclosed, but rather show that the administration repeatedly revealed the contents of the Report and Memorandum to the public. *See* Pl. Br. at 13-15; *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 26 ("[T]he widely publicized nature of [the document at issue] is important in considering the confidentiality interests implicated by the [document's] disclosure under FOIA").

For example, the President's Proclamation includes granular detail from the Report and Memorandum. It states that the DHS Secretary developed baseline criteria as part of the Report and goes on to describe the criteria. Dkt. #1-1, § 1(c). The Proclamation also reveals the Memorandum's recommendations about purported deficiencies in information-sharing and identity-management practices by the eight countries included in the ban. *See* Dkt. #1-1, § 1(g)

---

[3] The heading for Section II.B of Plaintiff's brief in support of its motion for summary judgment incorrectly states that "The documents were broadly disclosed to the public." Pl. Br. at 13. This section heading is the only place in the brief that makes that assertion and it is inconsistent with the text of Section II.B. Counsel apologize to the Court and Defendant for this editing oversight.

4

("The Secretary of Homeland Security assesses that the following countries continue to have 'inadequate' identity management protocols, information-sharing practices, and risk factors, . . . such that entry restrictions and limitations are recommended: Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen."); Dkt. #1-1, § 2(a)–(h) (explaining the specific deficiencies identified for each of the eight countries included in the ban). The Proclamation also explicitly refers to the DHS Secretary's recommendations about countries that were not included in the ban. *Id.* § 1(g) ("The Secretary of Homeland Security also assesses that Iraq did not meet the baseline, but that entry restrictions and limitations . . . are not warranted.").[4]

      The government cannot now claim that it needs to prevent disclosure of the reports to preserve the President's ability to receive candid advice when the President himself broadcast the contents of that advice to the entire world. By describing who made the communications to the President and the contents of those communications, the confidentiality underlying the presidential-communications privilege is destroyed and thus inapplicable. *See Ctr. for Effective Gov't*, 7 F. Supp. 3d at 24 (holding that presidential-communications privilege turns on "whether application of the privilege is necessary to protect the confidentiality of [the] communications"); *In re Sealed Case*, 121 F.3d at 750 ("[c]onfidentiality is the touchstone of the privilege"). At a minimum, the government has failed to carry its burden of demonstrating that the information in the withheld documents is sufficiently different from the information that the President and other government officials disclosed such that the documents still qualify as confidential

---

[4] The administration also disclosed the Report's details in publicly available fact sheets, FAQ documents, and other public statements about the Proclamation. Pl. Br. at 14-15. The fact sheets explained the methodology used in the reports and detailed the "new baseline" requirements for information sharing, *see* Kala Decl. Ex. 17, at 6; Kala Decl. Ex. 18, at 1. The FAQ document further detailed the baseline requirements recommended in the reports and discussed the best practices for security partnerships, *see* Kala Decl. Ex. 19, at 1.

5

communications to the President.  As in *Center for Effective Government*, the privilege does not apply here because the documents at issue were widely distributed throughout the executive branch and summarized publicly.  Pl. Br. at 10–15.

II. **The Government Does Not Credibly Argue That the President Did Not Adopt the Report and Memorandum in His Proclamation.**

The government's argument that President Trump did not adopt the DHS Secretary's recommendations as policy contradicts explicit statements to the contrary throughout the record. The government attempts to escape the settled principle, that the deliberative-process privilege does not protect documents adopted as policy,[5] by claiming that Plaintiff has not cited "any public statements demonstrating that the government adopted any portion of the analysis contained in the records."  Gov't Opp. at 12.

But in oral argument before the Supreme Court the Solicitor General plainly stated, "After a worldwide multi-agency review, the President's acting DHS Secretary recommended that he adopt entry restrictions on countries that failed to provide the minimum baseline of information needed to vet their nationals.  The Proclamation *adopts those recommendations*." Transcript of Oral Argument, *Trump v. Hawaii*, 138 S. Ct. 923 (2018) (No. 17-965), Kala Decl. Ex. 16, at 3 (emphasis added).  It is hard to imagine a plainer statement that the recommendations in the Report and Memorandum were adopted.  Though the government now argues that President Trump consulted other high-level officials and considered several factors before issuing the Proclamation, that additional input does not detract from the adoption that the Solicitor General clearly described.  The government's assertion that the Solicitor General's statements did not "identify which recommendations were adopted, or the specific documents in

---

[5] *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356–57 (2d Cir. 2005).

6

which those recommendations were contained," Gov't Opp. at 12, strains credulity. The Supreme Court clearly understood what the Solicitor General said. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2405 (2018) ("The President adopted the Acting Secretary's recommendations and issued the Proclamation").

Further, President Trump's Proclamation makes clear that he did not simply accept the reports' conclusions without also adopting their analysis. The Report and Memorandum were prompted by a request for a list of countries that should face entry restrictions based on a worldwide review of vetting protocols. The Proclamation details the analysis and recommendations in both reports, presenting the baseline standards set forth in the Report as the policy for assessing countries during the "50-day engagement period," Dkt. #1-1, § 1(c)-(f), and pointing to the Memorandum's analysis to justify the specific restrictions established in the Proclamation. *Id.* §1(g)-(i) ("According to the report, the recommended restrictions would help address the threats that the countries' identity-management protocols, information-sharing inadequacies, and other risk factors pose to the security and welfare of the United States.").

This is a more detailed presentation of the analysis and recommendations in an underlying report than was provided in *La Raza*.[6] There, the "most detailed discussion of the OLC Memorandum" explained the question that the memorandum addressed and summarized the conclusion: "[I]n a nutshell [the OLC] concluded that there is no federal preemption . . . . [T]he authority to make such arrest[s] is an inherent authority possessed by the state." *Nat'l Council of La Raza*, 411 F.3d at 354 (alterations in original). If the statements in *La Raza* were

---

[6] The government's adoption of the reports in question distinguishes this case from cases cited by the government such as *Tigue v. U.S. Department of Justice*, where the final policy made only "minor references" to a memorandum, 312 F.3d 370, 381 (2d Cir. 2001), and *Wood v. FBI*, where an agency used a report to make a "yes or no decision" without providing reasoning. 422 F.3d 78, 84 (2d Cir. 2005).

sufficient to show that the Justice Department had adopted the OLC Memorandum, then President Trump's Proclamation and the Solicitor General's statement to the Supreme Court are surely sufficient to show that the administration adopted the reports as official policy.

**III.    The Government Fails to Rebut Plaintiff's Showing That It Must Adequately Describe Exemption 1 and 7(E) Information.**

The Second Circuit has been unequivocal that "blind deference" to agency assertions of Exemption 1 is "precisely what Congress rejected" as being inconsistent with FOIA, *Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999), but that is what the government urges here.  It merits emphasis that the agency "withholding documents responsive to a FOIA request bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S. Dep't of Justice*, 681 F.3d 61 (2d. Cir. 2012) (citation omitted).

The government's revised *Vaughn* index makes clear that only portions of the documents are claimed to fall within Exemptions 1 and 7(E).  Yet the government's declarations fail to identify these discrete portions or to explain why the information is properly classified or would reveal confidential investigative techniques in light of the wealth of information about the documents contained in the Proclamation and the government's other public releases describing the Report and Memorandum.  The government tries to shift the burden to Plaintiff, complaining that Plaintiff did not show that "public information specifically matches the information withheld."  Gov't Opp. at 19.  But the burden is on the government to demonstrate that the withheld portions do not match the publicly disclosed information that Plaintiff has identified. *See Lamont v. Dep't of Justice*, 475 F. Supp. 761, 780 (S.D.N.Y. 1979) (summary judgment on Exemptions 1 and 7(E) denied because "the conclusory affidavits give the Court no factual basis to rule that the withheld portions have not in fact been disclosed to the public heretofore"); *Associated Press v. U.S. Dep't of Def.*, 462 F. Supp. 2d 573, 576 (S.D.N.Y. 2006) (affidavits

8

supporting Exemption 1 are sufficient when they "are not controverted by . . . contrary evidence in the record"). Further specification and justification are required and, after Plaintiff has an opportunity to respond, verification by the Court through in camera inspection may be required.[7]

### IV.   The Government Has Not Demonstrated That Its Search Was Adequate.

The dispute over the adequacy of the search centers on whether the final reports on the eight countries identified in section 2 of the Proclamation and on the sixteen "inadequate" countries referred to in section 1(e) of the Proclamation were sent to the President. The State Department's search for these documents consisted of an electronic search by a FOIA office staff assistant of the classified email account of one official ("the CA-VO Special Assistant") within the Office of Visa Services, which is a unit within the State Department's Bureau of Consular Affairs. Second Stein Declaration ¶¶ 15–18. The search terms used for this query were "20 Day Report, 50 Day Report." *Id.* ¶ 18. The government's declaration does not explain whether these search terms were applied separately or cumulatively. This search yielded the five records now before the Court, *id.* ¶ 19, but would not have been broad enough to capture country-specific reports sent to the President. Without identifying who spoke with whom, the State Department's declarant says that "the Department verified with officials who had worked on creating the records that . . . no further records existed that were responsive to the portions of Plaintiff's request described in the Complaint." *Id.* ¶ 19. The located documents originated with DHS, so the State Department referred them to DHS for review, *id.* ¶ 9; Holzer Decl. ¶ 9, an inter-agency

---

[7] "*In camera* inspection does not depend on a finding or even tentative finding of bad faith," *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (internal citations omitted). In a case like this one, in camera review is appropriate because of the "importance of the issues raised by [the] case," *Am. Civil Liberties Union v. F.B.I.*, 429 F. Supp. 2d 179, 186 (D.D.C. 2006), and the limited number of documents at issue, *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 315 (S.D.N.Y. 2012) (in camera inspection particularly appropriate given small number of documents).

procedure that is standard under FOIA.[8] Although the DHS declarant avers that DHS conducted its own review of the referred documents for exemptions, Holzer Decl. ¶ 10, he does not say that DHS conducted its own search for additional documents responsive to Plaintiff's request.

It is clear from this account that the agency that sent the relevant materials to the President (i.e., DHS) did not search its own files for country reports. Nor was the State Department's search adequate to retrieve the country reports. It would be an exceedingly simple matter for a government declarant to say that no country reports were sent to the President, if that is the case. Instead, the government relies on its murky account of what the State Department did, and what DHS did not do, to make the statement that "no further records existed that were responsive." This assertion is not supported by the clarity and detail required by FOIA. *See Katzman v. CIA*, 903 F. Supp. 434, 438 (E.D.N.Y. 1995) (stating "conclusory and not relatively detailed" affidavits are inadequate). Where the request is for specific and readily identifiable documents, country reports sent to the President, the government should be required to state that no country reports were sent to the President rather than relying on an inadequate search process.

## CONCLUSION

For these reasons and those set forth in Plaintiff's opening memorandum, Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion for partial summary judgment should be granted. Specifically, Plaintiff requests that the Court (i) deny Defendant's Exemption 5 claims, (ii) order Defendant to supplement its declarations with respect to Exemptions 1 and 7(E), (iii) order Defendant to release all reasonably segregable portions of the responsive documents, and (iv) order Defendant to remedy its inadequate search.

---

[8] *See* Dep't of Justice, OIP Guidance: Referrals, Consultations, and Coordination: Procedures for Processing Records When Another Agency or Entity Has an Interest in Them, https://www.justice.gov/oip/blog/foia-guidance-13, Reply Declaration of Ishita Kala, Ex. 30.

New York, New York
August 2, 2018

Neil K. Roman
Ishita Kala
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
nroman@cov.com
ikala@cov.com

Mark H. Lynch[i]
Kevin Barnett[i]
Jaclyn E. Martínez Resly[i]
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-6000
mlynch@cov.com
kbarnett@cov.com
jmartinezresly@cov.com

Respectfully submitted,

 s/ Neil K. Roman
     Neil K. Roman

Johnathan Smith
Sirine Shebaya
MUSLIM ADVOCATES
P.O. Box 66408
Washington, DC 20035
(202) 897-1897
johnathan@muslimadvocates.org
sirine@muslimadvocates.org

Richard B. Katskee[i]
Eric Rothschild[i]
Andrew L. Nellis[i]
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
1310 L St. NW, Suite 200
Washington, DC 20005
(202) 466-3234
katskee@au.org
rothschild@au.org
nellis@au.org

[i] *Admitted pro hac vice*

*Attorneys for Plaintiff Brennan Center for Justice at New York University School of Law*