# Exhibit 30



THE UNITED STATES
DEPARTMENT of JUSTICE

Search this site

HOME    ABOUT    AGENCIES    RESOURCES    NEWS    CAREERS    CONTACT

Home » Office of Information Policy

Office of Information Policy Home

About the Office

Meet the Director

OIP Guidance

   DOJ Guide to the FOIA

   FOIA Resources

   Training

      Best Practices Workshop Series

Chief FOIA Officers Council

Reports

Make a FOIA Request to DOJ

OIP FOIA

Contact the Office

Employment Opportunities

Sobre la Oficina de Politicas Informacion

## OIP GUIDANCE

### Referrals, Consultations, and Coordination:
### Procedures for Processing Records When Another Agency or Entity Has an Interest in Them

In the course of processing records responsive to FOIA requests, it is not uncommon for agencies to locate records which either originated with another agency, or another component within their agency, or which contain information that is of interest to another agency or component. The long-standing practice in such situations is to either *refer* the requested record to the originating agency or component for it to process, or to *consult* with the other agency or component that has equity in the document to get its views on the sensitivity of the document's content prior to making a disclosure determination. Typically, agencies *refer* records for direct handling to another agency when the records originated with that other agency. By contrast, when records originated with the agency processing the request, but contain within them information of interest to another agency, the agency processing the request will typically *consult* with that other agency prior to making a release determination.

There are several benefits to these procedures. They foster efficiency and ensure consistency of responses. They also help ensure that agencies making release determinations are fully informed about any sensitivities of the content of the documents. While referrals and consultations are widely utilized and accepted, *see, e.g.*, *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007), it is important that agencies remain cognizant of the importance of keeping requesters informed so that they understand what has happened to the documents that are responsive to their requests, that they are not disadvantaged by the referral and consultation process, and that they have a point of contact at the relevant agency where they can make inquiries about the status of their requests, including the status of any records that have been referred.

The updated procedures for referrals and consultations that are outlined below are designed to address all these important interests. They set forth the general rules agencies should follow both in making referrals and consultations and in handling any such referrals and consultations sent to them. They also address the exceptional cases where there is a need to protect personal privacy or national security interests and so coordination, as described below, rather than the standard referral procedures, should be used. Lastly, the procedures are designed to maximize efficiency and ensure agency accountability for the overall benefit of FOIA administration.

### Threshold Considerations

There are a few threshold considerations that must be taken into account prior to making a referral or consultation. First, while the typical practice should be to refer records when they originated with another agency, if the agencies jointly agree that the records can be handled as a consultation, that is permissible. Ultimately, the agency in the best position to respond regarding the records should do so. Typically that is the originator of the records, but that is not necessarily always the case.

Second, before making a referral of records to another agency or component for handling and direct response to the requester, agencies must be sure that the entity that will receive the referral is itself subject to the FOIA. It is not appropriate to refer records for direct response to the FOIA requester if the entity that originated the records is not itself subject to the FOIA. *See EPIC v. NSA*, No. 10-0196, 2011 WL 2650206, at *5 (D.D.C. July 7, 2011) (holding that while "[i]t is true that agencies that receive FOIA requests and discover responsive documents that were created by another agency [they] may forward, or 'refer'" those documents to the originating agency, if the originating entity is not an agency subject to the FOIA, it "cannot unilaterally be made subject to the statute by any action of an agency, including referral"). Thus, a referral should not be made to Congress, the courts, state governmental entities, private businesses, or individuals. As discussed below, an agency may consult with such entities as necessary, but the agency must then make a disclosure determination and respond itself concerning those documents.

Third, when agencies find that they routinely locate the same or similar types of documents or information that originated with another agency, or when agencies find that they routinely receive for consultation or referral the same type of record or information from another agency, they should look for ways to collaborate to see if they can adopt standard processing procedures with regard to the documents or information that might reduce the number of referrals or consultations that need to be made. This, in turn, will improve overall processing times both for the agency which otherwise would have made the referral or consultation and the agency that otherwise would have received the referral or consultation.

## Updated Standard Procedures for Making a Referral

In the absence of a processing agreement, when an agency locates records which originated with another agency or component, the records should ordinarily be referred to the originating agency for processing and direct response to the requester. The following steps should be taken when making a referral of documents to another agency or component, subject to the exceptions described below regarding coordinating a response.

- Identify records appropriate for referral to other agencies or components as soon as practicable during the course of processing a request.

- Prior to making the referral, review the records for any equity your agency may have and include your agency's disclosure recommendations in the referral memorandum. That will facilitate the processing of the referral by the receiving agency.

- Send the documents, with the accompanying memorandum containing your agency's disclosure recommendations, to the originating agency or agencies as soon as practicable during the course of your processing.

- Include in the referral package the FOIA request number assigned by your agency. That original FOIA request number should always accompany any communication concerning the referred documents. Also include a copy of the FOIA request.

- Provide the date the request giving rise to the referral was received by your agency. That will allow the agency receiving the referral to place the records in any queue according to that request receipt date.

- Advise the FOIA requester that a referral of records has been made, provide the name of the agency to which the referral was directed, and include that agency's FOIA contact information.

- Maintain a copy of the records being referred and the cover memorandum accompanying the referral.

These steps serve several overlapping purposes. They make the referral process transparent; they maximize administrative efficiency; and they facilitate tracking of the referred documents. By identifying the agencies to which referrals were directed and by maintaining the original FOIA request number on any communication concerning the referred documents, the requester will be able to readily match the documents released as a result of the referral with the original request.

## Standard Procedures Upon Receipt of a Referral

When an agency receives a referral of documents from another agency or another component, the following steps should be taken to ensure efficiency and accountability.

- Assign your own agency's tracking number to the referral so that you can readily track it.

- Send the FOIA requester an acknowledgment of receipt of the referral and identify the agency that made the referral, subject to the exceptions described below for coordinating a response.

- Include in the acknowledgement both your agency's tracking number and the original FOIA request tracking number assigned by the agency making the referral so that the requester can readily link the referred records to his or her original request.

- Provide the FOIA requester with a telephone line or internet service that can be used to obtain information about the status of the referred records.

- Track the referral just as you would an incoming request and include it in your Annual FOIA Report.

- Place the documents that make up the referral in the appropriate processing track at your agency according to the date the FOIA request was first received by the agency making the referral, and not according to the date the referral was received by your agency. In that way, the FOIA requester does not incur any timing disadvantage by virtue of the fact that a referral was made.

- Always include the original request number from the referring agency as well as your own referral number in any correspondence with the requester regarding the referred documents.

If your agency can provide a final response to the requester on the referred documents in ten days or less, a separate acknowledgement letter is not necessary. In that case, you should provide the required information about the agency that made the referral, as well as the original FOIA request number, in the final response itself.

## Exceptions to Standard Procedures for Making Referrals – Coordinating the Response

There have always been occasions where an agency may locate in its files law enforcement records originating with a law enforcement agency or classified records originating with an agency that is a member of the Intelligence Community. When responding to requests that encompass those records, it has occasionally been necessary to use modified procedures in order to avoid inadvertently revealing a sensitive fact that could invade someone's personal privacy or damage national security interests. Under such modified procedures, which should be invoked only when necessary to avoid such inadvertent disclosures, the agency that originally received the request will typically respond to the requester itself, after coordinating with the law enforcement or Intelligence Community agency that originated the records.

The use of these modified procedures has arisen most typically in the context of a request for records on a living third party, made without consent, to a non-law enforcement agency. If such a non-law enforcement agency located within its files records originating with a law enforcement agency, and if the existence of that law enforcement interest in the third party was not publicly known, then to disclose that law enforcement interest could cause an unwarranted invasion of the personal privacy of the third party. *See, e.g., SafeCard Servs. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (recognizing categorical protection for identities of individuals mentioned in law enforcement files). It is well established that individuals have a strong privacy interest in not being publicly associated with a law enforcement investigation. *See, e.g., Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (finding that connection with law enforcement file "'carries a stigmatizing connotation'" (quoting *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987))). Similarly, if an agency locates within its files material originating with an Intelligence Community agency, and the involvement of that agency in the matter, is classified and not publicly acknowledged, then to disclose or give attribution to the

involvement of that Intelligence Community agency potentially could cause national security harms. *See* Exec. Order No. 13,526, § 3.6(b), 3 C.F.R. 298 (2009). In both these situations, where the involvement of the originating agency is not publicly acknowledged, the standard referral procedures are not appropriate, and the agency in receipt of the request should instead coordinate with the agency which originated the documents and then make the response itself. In these instances, both agencies will need to take extra steps in order to ensure that requests receive the most efficient and transparent handling possible, consistent with the privacy and national security interests involved.

## Procedures for Coordinating a Response

These steps, which are referred to as "coordinating a request," are designed to ensure that the records are processed efficiently, with greater accountability, and improved customer service in their handling. In order to ensure that coordination across agencies does not create a risk of any drop in the quality of customer service, agencies must work proactively and conscientiously to ensure that they all work to fulfill the FOIA's purposes. This updated guidance identifies important steps in a process that, while not new, can be complicated.

To avoid inadvertently invading an individual's personal privacy or inadvertently revealing protected national security information, the agency in receipt of a request involving unacknowledged law enforcement or national security records that originated with another agency or another component should not automatically follow the standard referral procedures. Instead, the agency in receipt of the request should coordinate with the originating agency before itself making a response to the requester according to the following steps. For documents involving Intelligence Community agencies, because the agency in receipt of the request might be unaware of the sensitivity of the documents at issue, it is important that no referral be made without first coordinating with the Intelligence Community agency involved.

- Upon identification of unacknowledged law enforcement or Intelligence Community records, contact the agency or component originating such records to inquire whether that agency's or component's involvement in the matter can be publicly acknowledged without invading personal privacy or causing national security harms. Provide copies of the request and the requested records as necessary to facilitate this process.

- The agency that originated the records shall promptly respond to the inquiry from the agency in receipt of the request.

- If the agency that originated the records advises that there are no privacy or national security harms at risk by virtue of their involvement, then the standard referral procedures outlined above can be followed. In those cases, the agency receiving the referral will respond directly to the requester according to the standard referral process.

- Otherwise, the agency originally in receipt of the request should coordinate with the agency that originated the records to determine how the records should be handled under the FOIA.

- The agency that originated the records and whose views are being sought through the coordination should assign a tracking number to the documents that are the subject of the coordination and should account for their handling in its Annual FOIA Report.

- During the time the agency originally in receipt of the request is coordinating with the other agency, the agency originally in receipt of the request shall respond to status inquiries made by the requester.

- The agency that originated the documents and whose views are being sought is responsible, upon request, for promptly providing updated status information to the agency originally in receipt of the request. That agency shall work proactively with the receiving agency to ensure that the processing of the request is conducted efficiently and that the requester is not disadvantaged as a result of the coordination process. Moreover, to preserve the privacy and law enforcement interests at stake, the

originating agency should promptly provide its views on the records so that they can be readily incorporated into the receiving agency's response letter.

- The release determination for the records that are the subject of the coordination should be conveyed to the requester by the agency originally in receipt of the request.

As with standard referrals, these procedures for coordinating a response serve several overlapping purposes. They ensure that an individual's privacy is not inadvertently invaded or a national security interest in a topic is not inadvertently compromised through the mechanics of the referral process. At the same time, they facilitate the handling of, and promote accountability for, the records that are the subject of the coordination. Lastly, they ensure that the FOIA requester retains a point of contact for the documents subject to the coordination who can provide information regarding the status of the request.

## Consultations

There are several situations where it is appropriate for agencies to consult with another agency or entity which holds an interest in the documents that are the subject of a FOIA request. This most commonly arises when an agency locates records in response to a request that originated with the agency, but which contain within them information of interest to another agency or another component. In those situations, the agency processing the request should consult with that other agency, or equity holder, to obtain its views prior to disclosure of the records.

Consultations, rather than referrals, are also appropriate when an agency locates records in its files that originated with an entity that is not itself subject to the FOIA. The agency may consult with that outside entity as part of its process of making a disclosure determination. Such consultations are required by Executive Order 12,600 whenever an agency is processing a request for records that arguably contain material exempt from release under Exemption 4 of the FOIA. *See* 3 C.F.R. 235 (1988). Pursuant to Executive Order 12,600, agencies are required, with certain limited exceptions, to establish procedures to consult with the submitter of such records in order to obtain the submitter's views prior to making a disclosure determination. *See* Exec. Order No. 12,600, § 1. As part of those procedures, Executive Order 12,600 specifically requires that agencies notify requesters to advise them that they are seeking the views of the submitter on documents sought by the requester. *See id.* § 9.

As mentioned above, agencies are encouraged to establish agreements to eliminate the need for consultations on regularly occurring information in their files. Agencies should also set up mechanisms to facilitate prompt responses to consultations. These can range from establishment of dedicated points of contact for certain information to utilization of shared document platforms by agencies which frequently need to consult with one another.

## Procedures for Making a Consultation

When consulting with another agency to obtain its views on disclosure, agencies should take the following steps.

- Utilize the most time-efficient mechanism in conducting the consultation. For example, in certain situations a phone call or e-mail to the agency whose views are being sought may be all that is required.

- For consultations requiring a more extensive review by the other agency, provide copies of the documents at issue, a copy of the request letter, and any other information that may assist the other agency in its analysis.

- Conduct consultations simultaneously, rather than sequentially, whenever possible, to ensure greater efficiency. When doing so, advise the receiving agencies of the other agencies that are also reviewing the documents.

- When providing updates to requesters on the status of their requests, include information concerning

ongoing consultations. Ordinarily, with the same exceptions noted above in the section on coordinating responses, the identity of the entity which is being consulted can be provided to the requester.

### Procedures Upon Receipt of a Consultation

Whenever an agency receives a consultation from another agency, it should be mindful of the need to respond as promptly as practicable to the consultation to facilitate the other agency's ability to finalize its response to the request. To ensure greater accountability for the handling of consultations the Department of Justice created a requirement that agencies include data in their Annual FOIA Reports each year regarding any consultations that they receive. Agencies must report in Section XII of their Annual FOIA Reports the number of consultations received, the number processed, and the number of consultations remaining pending at the end of the fiscal year, including the dates the ten oldest pending consults were received and the number of days those ten oldest consultations have been pending.

Upon receipt of a consultation, agencies should take the following steps.

- Assign the consultation a tracking number to facilitate its handling and inclusion in your Annual FOIA Report.

- Promptly provide your agency's views on the disclosability of the contents of the records to the agency seeking the consultation. Utilize the most time-efficient method in doing so.

- Continuously assess the need and frequency of the consultations you receive so that you can identify ways to streamline or eliminate the need for certain consultations.

### Conclusion

When processing records in response to FOIA requests, agencies often locate records or information that originated outside their agencies. By utilizing the referral, coordination, and consultation procedures outlined above, agencies can make certain that they are appropriately handling the records. These procedures ensure that agencies are making fully informed and consistent disclosure determinations, in a manner that maximizes efficiency. They also ensure that FOIA requesters understand how their requests are being handled and always have a point of contact to obtain information about the status of any of the records subject to their requests.

---

**Component(s):**
Office of Information Policy

### RELATED BLOG POSTS

FOIA Post (2009): Summaries of New Decisions - November 2009
December 16, 2009

Summaries of New Decisions - November 2009 As announced previously by OIP, we are now posting up-to-date summaries of new court decisions. To facilitate their review, the cases are broken down by FOIA Exemption or procedural element and internal citations and quotations have been omitted. OIP provides these case summaries as a public service; due to their nature as summaries, they are not intended to be authoritative or complete statements of the facts or holdings of any of the cases summarized...

FOIA Post (2009): Summaries of New Decisions -- March 2009
April 20, 2009

Summaries of New Decisions -- March 2009 As announced previously by OIP, we are now posting up-to-date summaries of new court decisions. To facilitate their review, the cases are broken down by FOIA Exemption or

procedural element and internal citations and quotations have been omitted. OIP provides these case summaries as a public service; due to their nature as summaries, they are not intended to be authoritative or complete statements of the facts or holdings of any of the cases summarized,...

Summaries of New Decisions
March 23, 2011

Summaries of New Decisions - February 2011 As announced previously by OIP, we are now posting up-to-date summaries of new court decisions. Â To facilitate their review, the cases are broken down by FOIA Exemption or procedural element and internal citations and quotations have been omitted. Â OIP provides these cases summaries as a public service; due to their nature as summaries, they are not intended to be authoritative or complete statements of the facts or holdings of any of the cases...

FOIA Post (2009): Summaries of New Decisions -- September 2009
November 3, 2009

Summaries of New Decisions -- September 2009 As announced previously by OIP, we are now posting up-to-date summaries of new court decisions. To facilitate their review, the cases are broken down by FOIA Exemption or procedural element and internal citations and quotations have been omitted. OIP provides these case summaries as a public service; due to their nature as summaries, they are not intended to be authoritative or complete statements of the facts or holdings of any of the cases...

**MORE BLOG POSTS**

*Updated August 15, 2014*

---

**U.S. Department of Justice**
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Stay Connected with Justice:**

   


Email Updates

| | |
|---|---|
| en ESPAÑOL | Archive |
| Contact DOJ | Accessibility |
| | Information Quality |
| | Privacy Policy |
| | Legal Policies & Disclaimers |
| | Social Media |

Budget & Performance
Office of the Inspector General
No FEAR Act
For Employees
FOIA
USA.gov